[No. C005922. Third Dist. Nov. 19, 1990.]

JOHN DOWELL HUNT et al., Plaintiffs and Respondents, v. COUNTY OF SHASTA et al., Defendants and Appellants.

434

COUNSEL

David R. Frank, County Counsel, McDonough, Holland & Allen, Mark A. Wasser and Robert S. Fisher for Defendants and Appellants.

Dwight L. Herr, County Counsel (Santa Cruz), Jonathan Wittwer, Chief Deputy County Counsel (Santa Cruz), Nancy N. McDonough, Washburn, Briscoe & McCarthy and Bruce S. Flushman as Amici Curiae on behalf of Defendants and Appellants.

Weintraub, Genshlea, Hardy, Erich & Brown, Dale C. Campbell, Wells, Wingate, Small & Graham, Robert A. Rehberg and W. Leonard Wingate for Plaintiffs and Respondents.

William M. Pfeiffer, Judith K. Herzberg and Barry B. Barfield as Amici Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**SCOTLAND, J.**—Having decided to sell portions of their property located in Shasta County, plaintiffs asked defendants for a determination that the property complied with the Subdivision Map Act.

Government Code section 66499.35 provides that, upon the request of an owner of real property, the county board of supervisors shall determine whether the property complies with the provisions of the Subdivision Map Act. (Gov. Code, § 66410 et seq.; further statutory references are to this code unless otherwise specified.) If the board determines that the property complies, it must issue a certificate of compliance so stating. If it determines that the property does not comply, the board must issue a certificate of compliance or conditional certificate of compliance informing the owner of conditions which must be fulfilled before a development permit will be granted. (*Ibid.*) The board's decision is subject to judicial review. However, any action or proceeding to attack, review, set aside, void or annul the board's decision must be commenced and service of summons effected within 90 days after the date of the decision. (§ 66499.37.)

Disregarding its statutory duty, the Shasta County Board of Supervisors (Board) issued neither a certificate of compliance nor a conditional certificate because two of its members recused themselves, and the remaining three could not agree whether plaintiffs' parcels complied with the Subdivision Map Act.

Almost three years later, plaintiffs sought judicial relief. Among other things, they asked for a declaration that the parcels complied with the act and for a writ of mandate directing defendants to issue the requested certificates of compliance.

Defendants moved for judgment on the pleadings on the ground that plaintiffs' action was untimely under the 90-day rule of section 66499.37. Plaintiffs disagreed, claiming the Board took "no action" on their application and thus failed to render a "decision" that could commence the 90-day period for judicial review. In support of this contention, plaintiffs cited section 25005 which provides in pertinent part: "No act of the board shall be valid or binding unless a majority of all the members concur therein." (See *Dry Creek Valley Assn., Inc.* v. *Board of Supervisors* (1977) 67 Cal.App.3d 839, 845 [135 Cal.Rptr. 726]; 58 Ops.Cal.Atty.Gen. 706, 707 (1975).)

The trial court rejected defendants' argument that the action was time-barred and entered summary judgment for plaintiffs.

As explained below, we conclude that, although it was not valid or binding within the meaning of section 25005, the Board's less than majority vote which, in effect, rejected plaintiffs' request for certificates of compliance was final for the purpose of permitting judicial review. Were it otherwise, the Board's failure—for lack of a majority vote with no further action contemplated—to issue a certificate or conditional certificate of compliance would be irremediable.[1] It follows that, as a matter of legislative intent, the Board's vote triggered the 90-day rule of section 66499.37. Accordingly, we find that this action is barred by the statute of limitations and shall reverse the judgment without reaching the merits of the claim underlying the action.

## FACTS AND PROCEDURAL BACKGROUND

Before the regulation of subdivisions began in California, members of the Daniel Hunt family acquired numerous parcels in Shasta, Modoc and Lassen counties and created what was known as the "Hunt Ranch." The Shasta County portion of this ranch covers almost 16,000 acres spread over 4 noncontiguous sections and is comprised of approximately 80 parcels which were originally created by the issuance of federal land patents, railroad deeds and other deeds between 1862 and 1922.

In 1967, a title report on the Hunt Ranch described it as containing 49 parcels. When the ranch was sold in 1974, the title company revised its report to indicate that the ranch contained 40, rather than 49, parcels. Since then, a 40-parcel description has been used in numerous transactions, including the 1982 sale to plaintiffs Hunt and Wood.[2]

---

[1] This is not a situation where certain Board members were absent, and plaintiffs could have pursued a decision by the full Board. Those supervisors who did not vote had disqualified themselves. Thus, plaintiffs had exhausted their administrative remedy.

[2] From 1982 until July 1985, legal title was held by the Hunt-Wood Trust in trust for plaintiffs Hunt and Wood. Plaintiff Farrell purchased one parcel from Hunt.

In 1985, plaintiffs desired to sell 25 of the original parcels comprising the Hunt Ranch. At the suggestion of the county planning department, they asked the Board to issue certificates of compliance verifying that the 25 separate parcels were in fact lawful parcels which could be developed.

The planning department acknowledged that the parcels had been lawfully created between 1862 and 1922. Nonetheless, it recommended that the certificates be denied because the original legal descriptions had not been maintained in subsequent conveyances. The department concluded that, as a result of these conveyances, the parcels had merged into four noncontiguous parcels, and any resubdivision would require county approval.

On April 23, 1985, the Board held a hearing on plaintiffs' application. One of the five supervisors declared a conflict of interest and disqualified himself from voting. After hearing testimony and argument, the Board asked for written statements summarizing the parties' positions and continued the matter to April 30, 1985. On April 30, a second supervisor disqualified himself due to a conflict of interest. The remaining supervisors voted two to one to deny the certificates. County counsel then announced that no action had been taken on the applications because a majority of the five-member Board did not concur. (§ 25005.)

█ Although section 66499.35 required issuance of either a certificate of compliance or a conditional certificate of compliance[3] (see generally Cal. Subdivision Map Act Practice (Cont.Ed.Bar 1987) § 8.9, pp. 206-208), the Board did not do so following the divided vote. However, plaintiffs did not pursue judicial review of this breach of duty. Instead, they sought relief from the Legislature and successfully sponsored a bill to add section 1093 to

---

[3] Where a board of supervisors determines that property complies with the Subdivision Map Act, its procedure is governed by section 66499.35, subdivision (a), which provides: "Any person owning real property or a vendee of that person pursuant to a contract of sale of the real property may request, and a local agency shall determine, whether the real property complies with the provisions of this division and of local ordinances enacted pursuant thereto. Upon making the determination, *the city or the county shall cause a certificate of compliance to be filed for record with the recorder of the county in which the real property is located.* The certificate of compliance shall identify the real property and shall state that the division thereof complies with applicable provisions of this division and of local ordinances enacted pursuant thereto. The local agency may impose a reasonable fee to cover the cost of issuing and recording the certificate of compliance." (Italics added.)

Where the board determines that the property does not comply with the Subdivision Map Act, its procedure is governed by subdivision (b) which provides in pertinent part: "If a local agency determines that the real property does not comply with the provisions of this division or of local ordinances enacted pursuant thereto, *it shall issue a certificate of compliance or a conditional certificate of compliance. . . .* Upon making the determination and establishing the conditions the city or county shall cause a conditional certificate of compliance to be filed for record with the recorder of the county in which the real property is located . . . ." (Italics added.)

Thus, the board of supervisors must file either a certificate or a conditional certificate in all cases.

the Civil Code. As enacted, this section provides in pertinent part: "Absent the express written statement of the grantor contained therein, the consolidation of separate and distinct legal descriptions of real property contained in one or more deeds . . . into a subsequent single deed . . . does not operate in any manner to alter or affect the separate and distinct nature of the real property so described . . . . [¶] This section does not constitute a change in, but is declaratory of, the existing law." (Stats. 1985, ch. 911, § 1, p. 2905; eff. Jan. 1, 1986.)

Because in 1974 the Hunt Ranch deeds contained no "express written statement of the grantor" as required by Civil Code section 1093, plaintiffs believed that their parcels remained separate and distinct and could be sold and developed without county review and approval. After they made known their plan to auction off certain parcels, plaintiffs learned through the media that Shasta County officials had concerns about the auction. In a statement reported in a local newspaper, the county counsel indicated that, despite the legislation enacting Civil Code section 1093, he still regarded the Hunt Ranch as only four legally saleable parcels. This publicity adversely affected the success of the auction.

In January 1987, plaintiffs asked defendants to confirm that certain of the Hunt Ranch parcels were legally created and had not merged. Plaintiffs cited Civil Code section 1093 in support of their request. In reply, county counsel suggested that the newly enacted statute did not constitute an accurate declaration of the law which existed prior to the statute's enactment. County counsel then stated, "I think we may both safely conclude that Civil Code § 1093 is not a particularly strong source of support for your position. If the Legislature ever looks into the circumstances under which it was slipped into the Civil Code, I am confident that the section will evaporate at least as quickly as the 'law' it invented." As late as March 1988, the county planning department and county counsel's office continued to take the position that the Hunt Ranch parcels had merged by deed into four noncontiguous parcels.

In anticipation of holding a second public auction to sell parcels in dispute, plaintiffs filed this action on March 24, 1988, almost three years after the Board's failure to issue the certificates or conditional certificates of compliance. They requested (1) a declaration that the parcels are legal and have not merged through subsequent conveyance, (2) a permanent injunction prohibiting defendants from falsely stating that the parcels are invalid or from refusing to process building permits on that basis, and (3) a writ of mandate directing defendants to issue any requested certificates of compliance.

As previously noted, the trial court rejected defendants' claim that the action was time-barred, denied their motion for judgment on the pleadings,

and granted plaintiffs' motion for summary judgment.[4] Judgment was entered, and this appeal followed.

## DISCUSSION

On appeal, defendants contend that plaintiffs' claims are barred by the statute of limitations and by laches. Even if the claims are timely, defendants assert that they lack merit because the old parcels are invalid under the Subdivision Map Act and because Civil Code section 1093 cannot be retroactively applied to this case. Defendants also argue that the judgment improperly grants relief to persons who were not before the court and erroneously directs the Board to issue unconditional certificates of compliance.

Since defendants' statute of limitations contention has merit and is dispositive, we need not consider the underlying merits of this controversy.

■ A defendant is entitled to judgment on the pleadings if the plaintiff's complaint does not state a cause of action. In considering whether a defendant is entitled to judgment on the pleadings, we look only to the face of the pleading under attack and do not consider matters raised in the answer. All facts alleged in the complaint are admitted for purposes of the motion, and the court determines whether those facts constitute a cause of action. The court also may consider matters subject to judicial notice. (*Hughes* v. *Western MacArthur Co.* (1987) 192 Cal.App.3d 951, 954-955 [237 Cal.Rptr. 738]; *Sofias* v. *Bank of America* (1985) 172 Cal.App.3d 583, 586 [218 Cal.Rptr. 388]; see 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 261 et. seq., pp. 563-571.) ■ A pleading which on its face is barred by the statute of limitations does not state a viable cause of action and is subject to judgment on the pleadings.[5]

---

[4] In pertinent part, the trial court's ruling stated: "Civil Code section 1093 is the expressed statutory law of this state and cries out for interpretation under the facts presented here. The ultimate interpretation, and indeed resolution of the principal issue in this case as stated above, could have far reaching effect upon marketably [*sic*] of land titles, parcel designations, planning considerations, etc. [¶] The court recognizes, that regardless [of] its decision here the matter will eventually reach review by the appellate court. Finding no material factual issues for trial by a trier of fact, and determining there is essentially one material issue raised as a matter of law, and further finding that the application and interpretation of Civil Code section 1093 may bear heavily on that issue, the court *grants* the motion for summary judgment in order to expedite resolution of what is perceived as the only material issue. [¶] Defendant's [*sic*] motion for judgment on the pleadings is *denied* and plaintiff's [*sic*] motion for summary adjudication of issues in the alternative is rendered moot by the ruling on the motion for summary judgment." (Italics in original.)

[5] A complaint which shows on its face that the cause of action is barred by the statute of limitations is subject to demurrer. (5 Witkin, *op. cit. supra*, Pleading, §§ 912, 1039, pp. 349-350, 453-455; see, e.g., *Burke* v. *Maguire* (1908) 154 Cal. 456, 462 [98 P. 21].) A motion by a defendant for judgment on the pleadings operates as a general demurrer to the complaint. (*Sofias* v. *Bank of America, supra*, 172 Cal.App.3d at p. 586; *Davis* v. *City of Santa Ana* (1952) 108 Cal.App.2d 669, 685 [239 P.2d 656].)

All pertinent facts and dates necessary to determine the applicability of the 90-day statute of limitations of section 66499.37 are set forth in plaintiffs' complaint. ■■■ Thus, for the reasons which follow, we conclude that defendants were entitled to a judgment on the pleadings.

The parties agree that judicial review of applications for certificates of compliance is governed by the statute of limitations contained in section 66499.37, which provides: "Any action or proceeding to attack, review, set aside, void or annul the decision of an advisory agency, appeal board or legislative body concerning a subdivision, or of any of the proceedings, acts or determinations taken, done or made prior to such decision, or to determine the reasonableness, legality or validity of any condition attached thereto, shall not be maintained by any person unless such action or proceeding is commenced and service of summons effected within 90 days after the date of such decision. Thereafter all persons are barred from any such action or proceeding or any defense of invalidity or unreasonableness of such decision or of such proceedings, acts or determinations. Any such proceeding shall take precedence over all matters on the calendar of the court except criminal, probate, eminent domain and forcible entry and unlawful detainer proceedings."

Nevertheless, plaintiffs contend that this 90-day rule does not apply to their request for judicial review because, in accordance with section 25005,[6] the Board took "no action" on their applications and thus failed to render a "decision" within the meaning of section 66499.37 that would commence the 90-day period for review.

The position adopted by plaintiffs is patently inconsistent. On one hand they contend that, "the Supervisors did not render a valid decision *which* [*plaintiffs*] *could subsequently challenge*." (Italics added.) On the other hand, for obvious reasons they do not suggest that this lack of decision leaves us without jurisdiction to consider their claims. (See *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292 [109 P.2d 942, 132 A.L.R. 715] [doctrine of exhaustion of administrative remedies]; cf. *Kirk* v. *County of San Luis Obispo* (1984) 156 Cal.App.3d 453, 460 [202 Cal.Rptr. 606] [agency loses jurisdiction once it renders its decision].)

Simply stated, plaintiffs cannot have it both ways. If the lack of a majority vote does not preclude judicial review, then they must abide by its rules, including the applicable statute of limitations. Conversely, if the lack of a majority vote makes judicial review premature, then plaintiffs are out of court.

---

[6] In its entirety, section 25005 provides: "A majority of the members of the board constitute a quorum for the transaction of business. No act of the board shall be valid or binding unless a majority of all the members concur therein."

By filing this lawsuit, plaintiffs have acknowledged that the Board reached a judicially reviewable result. We agree. Although it was not valid or binding within the meaning of section 25005, the Board's two-to-one vote which, in effect, rejected the request for certificates of compliance was final for the purpose of permitting judicial review. ■ ■■■ ■ Were it otherwise, defendants' failure—for lack of a majority vote with no further action contemplated—to issue either a certificate of compliance or conditional certificate of compliance would be irremediable.[7, 8] (See Civ. Code, § 3523.)

However, we cannot accept plaintiffs' assertion that the statute of limitations did not commence to run simply because less than the majority of all the members of the Board concurred in rejecting plaintiffs' request.

This argument is untenable because it conflicts with the plain legislative intent in enacting the 90-day rule of section 66499.37. ■ The "patent legislative objective" of this section is to ensure that judicial resolution of Subdivision Map Act disputes occurs "as expeditiously as is consistent with the requirements of due process of law." (*Timberidge Enterprises, Inc.* v. *City of Santa Rosa* (1978) 86 Cal.App.3d 873, 886 [150 Cal.Rptr. 606], followed by this court in *Griffis* v. *County of Mono* (1985) 163 Cal.App.3d 414, 422 [209 Cal.Rptr. 519].) Such expedition is necessary because delay in the resolution of these disputes is ultimately reflected in increased development and housing costs. (*Griffis, supra*, at p. 422.) Plaintiffs' argument would permit judicial review that is anything but expeditious.

Following their applications, plaintiffs were statutorily entitled to receive either certificates or conditional certificates of compliance. (§ 66499.35; California Subdivision Map Act Practice, *supra*, at pp. 206-208.) They received neither, and no further action by the Board was contemplated. ■ Thus, plaintiffs' entitlement to the certificates was ripe for judicial review by May 1985, and nothing that has happened in the interim has made it more so. The Legislature must have intended that judicial review be timely sought at that point, or not at all.

By arguing that the 90-day statute did not run, and presumably could not begin to run until the Board reconsiders and renders a majority vote on

---

[7] See footnote 1, *ante*.

[8] Although the two-to-one vote is final for purposes of judicial review, it is not binding on the merits of the controversy and does not preclude the Board from considering new applications for certificates of compliance for the same parcels. (§ 25005 [no act of a board of supervisors is *binding* unless a majority of all the members concur therein]; see also *Heap* v. *City of Los Angeles* (1936) 6 Cal.2d 405, 407 [57 P.2d 1323] [a "final and conclusive" decision on the merits exhausts a commission's jurisdiction to reconsider *the issue*].) Although jurisdiction of an agency in a particular proceeding ordinarily lapses when it renders its "decision" (*Kirk* v. *County of San Luis Obispo, supra*, 156 Cal.App.3d at p. 460), such decision must be on the merits in order to be entitled to res judicata effect, and section 25005 compels the conclusion that the Board's vote in this matter was not such a decision.

their applications, plaintiffs in effect argue that they had an *unlimited* period in which to seek judicial review. ■ ■ ■ ■ For example, under plaintiffs' construction of section 66499.37, a landowner aggrieved by a divided vote of a bare quorum of a board of supervisors could wait 25 years, file an action, and then demand that his or her case be given preference on the court's calendar.[9] ■ It is a cardinal rule of statutory construction that "[i]n attempting to ascertain legislative intent when construing a statute we presume that the Legislature did not intend absurd results. [Citation.]" (*In re Head* (1986) 42 Cal.3d 223, 232 [228 Cal.Rptr. 184, 721 P.2d 65]; see *People* v. *Clark* (1990) 50 Cal.3d 583, 605 [268 Cal.Rptr. 399, 789 P.2d 127]; *People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843].) Given the purpose of section 66499.37 to expedite the resolution of Subdivision Map Act controversies, the Legislature could not have intended the result which would flow from plaintiffs' argument. (See *Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 343 [250 Cal.Rptr. 268, 758 P.2d 596] [when two statutory constructions appear possible, the courts favor that which leads to the more reasonable result].)

Citing *Chavez* v. *Sargent* (1959) 52 Cal.2d 162, 205 [339 P.2d 801], plaintiffs contend that when interpreting a statute, courts must presume that each word has been used intelligently and designed for an express purpose by the Legislature. Because the Legislature is presumed to act with knowledge of existing laws and judicial decisions at the time that it enacts or amends a statute (see *Viking Pools, Inc.* v. *Maloney* (1989) 48 Cal.3d 602, 609 [257 Cal.Rptr. 320, 770 P.2d 732]; *People* v. *Silverbrand* (1990) 220 Cal.App.3d 1621, 1628 [270 Cal.Rptr. 261]), plaintiffs suggest that when the Legislature amended section 66499.37 in 1980 it used the word "decision" knowing that a board of supervisors could take action only by a majority vote of all its members. (Stats. 1980, ch. 1152, § 14; see fn. 6, *ante.*)

We agree that these principles of statutory construction facially support plaintiffs' argument. ■ However, a construction that focuses on a single word must yield to one that focuses on the intent of the statute as a whole. An equally venerable rule of statutory construction is that "[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute. The intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act. [Citations.]"

---

[9] Plaintiffs attempt to counter this necessary implication of their argument by asserting that their action would be limited either by the three-year statute of limitations contained in Code of Civil Procedure section 338, subdivision (a), or by the four-year statute of limitations contained in Code of Civil Procedure section 343. This assertion effectively concedes that the board's "non-action" was a judicially reviewable event which triggered a statute of limitations. It follows that, because section 66499.37 is specifically tailored to Subdivision Map Act controversies, it must prevail over the more general statutes of limitation in the Code of Civil Procedure. (Code Civ. Proc., §§ 312, 1859; *People* v. *United States Fire Ins. Co.* (1976) 61 Cal.App.3d 231, 236 [132 Cal.Rptr. 139].)

(*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) In light of the Legislature's paramount intent to expedite judicial review of Subdivision Map Act controversies and thus to control building and housing costs (*Griffis* v. *County of Mono, supra,* 163 Cal.App.3d at p. 422), we believe that the Legislature meant the word "decision" to include any product of the local agency's decisionmaking process that is final in the sense that the agency contemplates no further action that could be preempted by premature judicial review. That includes the disposition here at issue.

Pointing out that this is not a situation where the statute expressly provides that nonaction is deemed to be a "decision" (compare §§ 11521, 66458, subd. (b)),[10] plaintiffs counter that when the Legislature intends that a statute of limitations begins to run when a governmental entity takes "no action," it has plainly said so. Their only citation is to Public Resources Code section 21167, subdivision (d), which provides that actions alleging that a public agency has improperly determined that a project is not subject to the provisions of the California Environmental Quality Act (CEQA) shall be commenced within 35 days following the filing of a notice of nonapplicability, or "[i]f such notice has not been filed, . . . within 180 days of the public agency's decision to carry out or approve the project, or, *if a project is undertaken without a formal decision by the public agency, within 180 days after commencement of the project.*" (Italics added.)

We believe the substantial differences between CEQA and the Subdivision Map Act make plaintiffs' comparison inappropriate. CEQA provides that, where the agency determines that a project is not subject to CEQA and approves or determines to carry out that project, it *may* but need not file notice to that effect. (Pub. Res. Code, §§ 21108, subd. (b), 21152, subd. (b).) CEQA does not mandate either that the notice be filed or that the agency formally decide to undertake the project. (Compare Pub. Res. Code, §§ 21108, subd. (a), 21152, subd. (a), *requiring* filing of notice where project

---

[10] Section 11521 deals with petitions for reconsideration of administrative agency decisions. It provides in pertinent part that "[i]f no action is taken on a petition within the time allowed for ordering reconsideration, the petition shall be deemed denied." Section 66458, subdivision (b), pertains to the approval or disapproval of a final map or parcel map. It provides in pertinent part, "If the legislative body does not approve or disapprove the map within the prescribed time, or any authorized extension thereof, and the map conforms to all requirements and rulings, it shall be deemed approved . . . ."

The absence of such a "deemed approved" or "deemed denied" provision in the statutes at issue here does not advance plaintiffs' argument. Under section 66499.35, a board of supervisors' options are not simply to approve or disapprove a submission by the landowner. Rather, that section requires the board to issue either a certificate stating that the property complies with the Subdivision Map Act or a certificate or conditional certificate of compliance informing the owner of conditions which must be fulfilled before a development permit will be granted. The Legislature presumably did not intend to equate the failure to issue one form of certificate with the issuance of the other.

*is* subject to CEQA.) Because CEQA contemplates that projects will be undertaken for which no formal approval is required, it provides a statute of limitations where no such formal approval has been given. The Subdivision Map Act is quite different. It contemplates that the landowner is entitled to receive either a certificate or conditional certificate of compliance in *all* cases when requested. The legislative scheme does not contemplate that there will be a substantial class of parcels for which neither certificates nor conditional certificates would be issued. Thus, there is no reason to create a special statute of limitations covering such situations. Simply stated, the omission from sections 66499.35 or 66499.37 of a provision similar to Public Resources Code section 21167 does not compel the conclusion that, for lack of a vote by a majority of the entire Board, the period in which to seek judicial review should be unlimited.

██ Plaintiffs also contend that statutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid the forfeiture of the plaintiff's rights. (See *Bollinger* v. *National Fire Ins. Co.* (1944) 25 Cal.2d 399, 411 [154 P.2d 399]; *Sevilla* v. *Stearns-Roger, Inc.* (1980) 101 Cal.App.3d 608, 611 [161 Cal.Rptr. 700] ["courts may not indulge in a strained construction to apply [a statute of limitations] to the facts of a particular case"].) We do not question this rule in the abstract; nor do we think that it is violated by our decision. As their trustee has acknowledged, plaintiffs knew of their option to pursue a judicial remedy in 1985 but consciously elected to pursue a legislative remedy instead. In September 1987, trustee Grady Rutledge wrote to Supervisor Don Maddox: "Because of an apparent conflict of interest, you, because of Mrs. Maddox's association with my firm, and Mr. Abe Hathaway, due to his family's ownership of several thousand acres of land in the immediate area, did not vote on the matter. The vote was one (1) vote in favor of the certificates and two (2) opposed. Lacking a majority on either side of the question, the result was that no action was taken by the Board. [¶] *The Hunt/Wood Trust, or my clients, J. D. Hunt and Wayne Wood, had an option at that point of going forward with a court action to resolve the matter or working through the legislature to clarify the existing statutes. We felt clarification should not have been necessary; however, we chose the latter.*" (Italics added.) Plaintiffs' assertion that our interpretation of section 66499.37 forfeits their rights is disingenuous; any loss is occasioned not by our interpretation of the statute but by their own tactical decision to forgo timely pursuit of a judicial remedy.

██ In sum, our duty when construing any statute is to ascertain the intent of the Legislature. (*Viking Pools, Inc.* v. *Maloney, supra*, 48 Cal.3d at p. 606; *In re Michael G.* (1988) 44 Cal.3d 283, 289 [243 Cal.Rptr. 224, 747 P.2d 1152].) We deem it significant that plaintiffs have not identified a single reason why the Legislature would intend to create the lengthy and poten-

tially limitless period of review for which they argue. The record discloses that plaintiffs were aware of their rights but chose to forgo them in favor of an alternative remedy which, we note, was not entirely unsuccessful. That plaintiffs' efforts were not well received by defendants is no reason to overturn the short statute of limitations that the Legislature has attached to Subdivision Map Act controversies. Defendants were entitled to a judgment on the pleadings.[11]

## DISPOSITION

The summary judgment for plaintiffs is reversed. ■■ ■■ ■■ ■■ ■■ The trial court is directed to vacate its order granting plaintiffs' motion for summary judgment and to enter a new order granting defendants' motion for judgment on the pleadings.[12] Defendants shall recover their costs on appeal.

Carr, Acting P. J., and Marler, J., concurred.

A petition for a rehearing was denied December 13, 1990, and the opinion was modified to read as printed above.

---

[11] Because we conclude this action is barred by section 66499.37, we have no occasion to consider the effect, if any, of Shasta County Ordinance Code section 4005 which also imposes a 90-day statute of limitations.

[12] In a petition for rehearing, plaintiff Farrell raises a new issue for the first time in this appeal. Although heretofore he was content to present his case as if he were merely the other plaintiffs' successor in interest who would share in whatever judicial relief they obtained, Farrell now contends that, since he was not a party to the application for a certificate of compliance in 1985, the 90-day statute of limitations does not bar his quest for a judicial remedy. His argument is as follows: After purchasing one of the disputed parcels in August 1987, he applied to the county for a sewer permit, which was denied on September 23, 1987, on the ground that his parcel was not legally separate but was part of the larger Hunt Ranch parcel. According to Farrell, at this point he did not have to exhaust his administrative remedy by applying for a certificate of compliance because to do so would have been futile in light of the fact that the county had made known that it did not recognize the separate legal existence of his parcel and had no intention of altering its position. Thus, Farrell argues, he was entitled to directly seek judicial review, and his application for same was not barred by any statute of limitations.

We reject this new contention. It is the duty of a party to see that all points are properly presented in the original briefs and argument before submission. In the absence of a showing of good cause for the failure to raise the issue earlier, an appellate court will not consider points newly urged in a petition for rehearing. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 684, pp. 656-657.) Even if Farrell had properly raised this contention, it would fail on its merits. Assuming an application for a certificate of compliance would have been futile as of September 23, 1987, when the county denied Farrell's application for a sewer permit, and would have been excused as of that date (a point we need not, and do not, decide), the fact remains that Farrell did not seek judicial review until March 24, 1988, more than six months later. In our view, if denial of the application for a sewer permit should operate to excuse Farrell's requirement to seek a certificate of compliance under the Subdivision Map Act, it also should operate to trigger the 90-day statute of limitations for judicial review of Subdivision Map Act controversies. Thus, even under his newly tendered theory, Farrell's action was untimely.