TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

| | |
|---|---|
| OPINION : | |
| : | No. 91-105 |
| of : | |
| : | August 13, 1991 |
| DANIEL E. LUNGREN : | |
| Attorney General : | |
| : | |
| RODNEY O. LILYQUIST : | |
| Deputy Attorney General : | |
| : | |

THE HONORABLE MICHAEL H. KRAUSNICK, COUNTY COUNSEL OF STANISLAUS COUNTY, has requested an opinion on the following question:

Is a county required to issue certificates of compliance for 15 lots that were described on a map properly recorded under a predecessor statute to the Subdivision Map Act, as well as local ordinances enacted thereunder, and for fractions of 17 other lots described on the map, which fractions were subsequently created by metes and bounds conveyances by deeds in which none of the lots were identified or recognized?

CONCLUSION

A county is required to issue certificates of compliance for 15 lots that were described on a map properly recorded under a predecessor statute to the Subdivision Map Act, as well as local ordinances enacted thereunder, and certificates of compliance or conditional certificates of compliance for fractions of 17 other lots that were described on the map, which fractions were subsequently created by metes and bounds conveyances in which none of the lots were identified or recognized.

ANALYSIS

We are informed that in 1914 a map was properly recorded under a predecessor statute to the Subdivision Map Act (Gov. Code, §§ 66410-66499.37; hereafter "Act"),[1] as well as local ordinances enacted thereunder, describing 68 lots of approximately 20 acres each in size. None of the lots were sold, and subsequent records ignored their existence and described the property as a single parcel. In 1941 deeds were recorded that conveyed a portion of the property by metes and

---

[1]All section references hereafter are to the Government Code unless otherwise specified.

bounds description.[2]  The boundaries on the deeds cut through 17 of the lots.  What remains today and the focus of the present inquiry is the area of 15 of the original lots plus the 17 fractions of lots.

The specific question presented for resolution is whether "certificates of compliance" (§ 66499.35) must be issued for these lots and fractions of lots.  After describing the effects of such certificates, we will conclude that they must be issued for the 15 lots but not for the 17 fractions of lots.  However, conditional certificates of compliance must be issued for the 17 fractions, if certificates of compliance are not issued for them.

Section 66499.35 provides:

"(a) Any person owning real property . . . may request, and a local agency shall determine, whether such real property complies with the provisions of this division and of local ordinances enacted pursuant thereto.  Upon making such a determination the city or the county shall cause a certificate of compliance to be filed for record with the recorder of the county in which the real property is located.  The certificate of compliance shall identify the real property and shall state that the division thereof complies with applicable provisions of this division and of local ordinances enacted pursuant thereto . . . .

"(b) If a local agency determines that such real property does not comply with the provisions of this division or of local ordinances enacted pursuant thereto, it shall issue a certificate of compliance or a conditional certificate of compliance.  A local agency may, as a condition to granting a certificate of compliance, impose such conditions as would have been applicable to the division of the property at the time the applicant acquired his or her interest therein, and which had been established at such time by this division or local ordinance enacted pursuant thereto, except that where the applicant was the owner of record at the time of the initial violation of the provisions of this division or of local ordinances enacted pursuant thereto, and such person is the current owner of record of one or more of the parcels which were created as a result of the grant in violation of the division or local ordinances enacted pursuant thereto, then the local agency may impose such conditions as would be applicable to a current division of the property.  Upon making such a determination and establishing such conditions the city or county shall cause a conditional certificate of compliance to be filed for record with the recorder of the county in which the real property is located. . . . the fulfillment and implementation of such conditions shall be required prior to subsequent issuance of a permit or other grant of approval for development of the property.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."[3]

A certificate of compliance thus establishes that the "property complies with the provisions of [the Act] and of local ordinances enacted pursuant thereto."  Such a determination is

_____

[2]A metes and bounds description gives the boundary lines of the property with their terminal points and angles.  Essentially, it is any description other than by reference to particular lots and parcels on a recorded subdivision map.  (See Merritt, *Metes and Bounds Descriptions:  A Red Flag Forewarning Possible Subdivision Map Act Violations* (Cont.Ed.Bar 1990) 13 Real Prop. L. Rep. 117 (hereafter *"Metes and Bounds"*).)

[3]"This division" is the Act.

significant in that divisions of land in violation of the Act may result in criminal prosecution (§ 66499.31), rescission of conveyance transactions (§ 66499.32), a claim for damages (§ 66499.32), a court injunction (§ 66499.33), and the withholding of development permits (§ 66499.34), among other consequences. ( See Cal. Subdivision Map Act Practice (Cont.Ed.Bar 1987) §§ 8.1-8.8, pp. 197-205, hereafter "CEB"; 2 Longtin, Cal. Land Use Regulations (2d ed. 1987) §§ 6.60-6.62, pp. 702-707.)

The Act's predecessor statutes may be traced back to 1893 as legislation with statewide impact. (Stats. 1974, ch. 1536; Stats. 1943, ch. 128; Stats. 1937, ch. 670; Stats. 1929, ch. 838; Stats. 1907, ch. 231; Stats. 1893, ch. 80; see *Hays v. Vanek* (1989) 217 Cal.App.3d 271, 289; 64 Ops.Cal.Atty.Gen. 549, 551-552 (1981); CEB, *supra*, § 1.2, pp. 2-3; 2 Longtin, *supra*, § 6.02, pp. 582-583; *Metes and Bounds*, *supra*, p. 119.) Even earlier statutes required the mapping of subdivided public lands and private lands to be sold within individual cities and towns. (See, e.g., Stats. 1867-1868, ch. 331 [San Francisco].)

To what extent and under what conditions do parcels created under one of the Act's predecessor statutes or in any manner other than pursuant to the current provisions of the Act "comply" with the Act as it presently reads?

Section 66412.6 states in part:

"(a) For purposes of this division or of a local ordinance enacted pursuant thereto, any parcel created prior to March 4, 1972, shall be conclusively presumed to have been lawfully created if at the time of the creation of the parcel there was compliance with any local ordinance or there was no local ordinance in effect which regulated divisions of land creating fewer than five parcels.

"(b) For purposes of this division or of a local ordinance enacted pursuant thereto, any parcel created prior to March 4, 1972, shall be conclusively presumed to have been lawfully created if any subsequent purchaser acquired that parcel for valuable consideration without actual or constructive knowledge of a violation of this division or the local ordinance. Owners of parcels or units of land affected by the provisions of this subdivision shall be required to obtain a certificate of compliance or a conditional certificate of compliance pursuant to Section 66499.35 prior to obtaining a permit or other grant of approval for development of the parcel or unit of land. . . ."

With respect to the 15 original lost created in 1914, they were "created prior to March 4, 1972," for purposes of section 66412.6.[4] These lots were also created in "compliance with any local ordinance" in effect in 1914. Accordingly, the 15 lots in question are "conclusively" presumed valid under the terms of section 66412.6, subdivision (a).

With respect to the 17 fractions of lots, they too were created prior to March 4, 1972 for purposes of section 66412.6. However, these fractions of lots were not created until 1941, when deeds were recorded conveying portions of the lots by metes and bounds description. We do not have the additional fact that the 17 fractions of lots were created in compliance with applicable 1941

_____

[4]The 1972 date is significant in that it was the effective date of the amendments to the Act (Stats. 1971, ch. 1446) requiring a map of divisions of four or fewer parcels. "Before this change, the requirement of a parcel map for these divisions was left to the dictates of individual cities and counties." (*Metes and Bounds*, *supra*, p. 121; see CEB (Supp. 1990) § 2.18, p. 9.)

local ordinances.  In fact, since the 1941 deeds did not create "fewer than five parcels," a map was required to be recorded under the 1941 version of the Act and local ordinances enacted thereunder. (See §§ 66424, 66499.30; 58 Ops.Cal.Atty.Gen. 593 (1975) [parcels created under a recorded subdivision map that had portions of each condemned through eminent domain proceedings required the filing of a new map in order to sell the remaining portions].)  Thus the 17 fractions do not qualify for the conclusive presumption of section 66412.6, subdivision (a).  The fractions would also not qualify under subdivision (b) of the statute, since the 1941 violation would be in the "chain of title," giving subsequent purchasers actual or constructive knowledge of the violation.  (See *Keiser v. Adams* (1970) 2 Cal.3d 976, 979; CEB (Supp. 1990) § 2.18, pp. 9-10; *Metes and Bounds, supra*, pp. 121-122.)  In any event, a certificate of compliance or conditional certificate of compliance must still be obtained under this subdivision "prior to obtaining a permit or other grant of approval for development. . . ."

One other statute requires analysis in order to fully answer the question submitted. Subdivision (a) of section 66451.10 states:

"Notwithstanding Section 66424, except as is otherwise provided for in this article, two or more contiguous parcels or units of land which have been created under the provisions of this division, or any prior law regulating the division of land, or a local ordinance enacted pursuant thereto, or which were not subject to those provisions at the time of their creation, shall not be deemed merged by virtue of the fact that the contiguous parcels or units are held by the same owner, and no further proceeding under the provisions of this division or a local ordinance enacted pursuant thereto shall be required for the purpose of sale, lease, or financing of the contiguous parcels or units, or any of them."[5]

As long as the parcels "have been created under . . . any prior law regulating the division of land . . . no further proceeding under the provisions of this division or a local ordinance enacted pursuant thereto shall be required . . . ."  (See § 66499.30, subd. (d) [filing a map is not required for any parcels of a subdivision "in compliance with . . . any law . . . regulating the design and improvement of subdivisions in effect at the time the subdivision was created"].)

The 15 lots qualify under section 66451.10 for separate treatment without any further proceedings under the Act or local ordinances enacted thereunder.  (See also § 66468 ["The filing for record of a final or parcel map by the county recorder shall automatically and finally determine the validity of such map and when recorded shall impart constructive notice thereto"]; *County of Los Angeles v. Hartford Acc. & Indem. Co.* (1970) 3 Cal.App.3d 809, 814 ["The recording of a final tract map for a normal subdivision automatically converts what was formerly a single parcel into as many separate lots as appear on the tract map"]; 59 Ops.Cal.Atty.Gen. 239, 241 (1976) ["A parcel once recorded under the Subdivision Map Act need not be re-recorded so long as it is not further divided"].)  While various statutory means exist to change the configuration of lots described on a valid subdivision map (see §§ 66412, 66499.11-66499.20 3/4; 64 Ops.Cal.Atty.Gen. 549, 553 (1981)), absence of their description in subsequent deeds of conveyances is not an authorized method.  (See also Civ. Code, § 1093; *Hunt v. County of Shasta, supra*, 225 Cal.App.3d 432, 437-439.)  Accordingly, the provisions of sections 66412.6 and 66451.10 are consistent in validating the

---

[5]Section 66424 is the basic provision of the Act defining a "subdivision" as "the division ... of any unit or units of improved or unimproved land, or any portion thereof ... for the purpose of sale, lease, or financing, whether immediate or future ...."  The article of the Act of which section 66451.10 is a part deals with the merger of parcels by local ordinance (§§ 66451.10 - 66451.21); a separate article deals with unmerger.  (§§ 66451.30 - 66451.33.)

15 lots described on the 1914 map, regardless of the later recordation of deeds that failed to refer to them.

The 17 fractions of lots are a different matter. They are not identified on the 1914 subdivision map, since they were created by deeds of conveyances in 1941. Their creation violated the requirement of a filed subdivision map under the Act or its predecessor statutes. Nonetheless, each qualifies for a conditional certificate of compliance under subdivision (b) of 66499.35, if not a certificate of compliance. As specified in the statute, however, the county may "impose such conditions as would have been applicable to the division of the property at the time the applicant acquired his or her interest therein" or conditions applicable to current divisions if the applicant was the one who caused the violation. (See § 66499.34; *Keiser v. Adams, supra*, 2 Cal.3d 976, 981; CEB, *supra*, § 8.9, pp. 207-208.)

In this regard, we note that even if conditional certificates of compliance are issued for the 17 fractions of lots, the county may prevent development of the lots pursuant to section 66499.34 regardless of when or by whom the violations occurred. Section 66499.34 states in part:

"No local agency shall issue any permit or grant any approval necessary to develop any real property which has been divided, or which has resulted from a division, in violation of the provisions of this division or of the provisions of local ordinances enacted pursuant to this division if it finds that development of such real property is contrary to the public health or the public safety. . . ."

Thus, for example, the county "may refuse to issue a building permit or to grant a rezoning variance or a conditional use permit for a parcel that results from a division of land that violated the Map Act . . . [if] based on a finding that development would be contrary to public health and safety." (CEB, *supra*, § 8.6, p. 203.)

Finally, we necessarily point out that the certificates referred to in section 66499.35 are issued only for purposes of and with respect to the requirements of the Act and local ordinances enacted thereunder. The same is true regarding the presumptions of section 66412.6 and the proceedings specified in section 66451.10. Other land use regulations are unaffected by the certificates and would require compliance with respect to the proposed activity to the extent applicable under their own statutory schemes and ordinances.

In answer to the question presented, therefore, we conclude that a county is required to issue certificates of compliance for 15 lots that were described on a map properly recorded under a predecessor statute to the Subdivision Map Act, as well as local ordinances enacted thereunder, and certificates of compliance or conditional certificates of compliance for fractions of 17 other lots that were described on the map, which fractions were subsequently created by metes and bounds conveyances in which none of the lots were identified.

\* \* \* \* \*