[No. E022717. Fourth Dist., Div. Two. July 16, 1999.]

HOWARD JARVIS TAXPAYERS ASSOCIATION et al., Plaintiffs and Appellants, v.
CITY OF RIVERSIDE, Defendant and Respondent.

**COUNSEL**

Jonathan M. Coupal; Timothy A. Bittle; Trevor A. Grimm; and Richard D. Gann for Plaintiffs and Appellants.

Stan T. Yamamoto, City Attorney; Howard, Rice, Nemerovski, Canady, Falk & Rabkin and Steven L. Mayer for Defendant and Respondent.

**OPINION**

**RICHLI, J.**—The question before us is whether streetlighting assessments come within Proposition 218's exemption for assessments imposed exclusively to finance the maintenance and operation of streets and sidewalks. We will hold that they do and therefore that preexisting streetlighting assessments are "grandfathered" under Proposition 218.

I

STATUTORY BACKGROUND

Proposition 218 can best be understood against its historical background, which begins in 1978 with the adoption of Proposition 13. "The purpose of Proposition 13 was to cut local property taxes. [Citation.]" (*County of Los Angeles* v. *Sasaki* (1994) 23 Cal.App.4th 1442, 1451 [29 Cal.Rptr.2d 103].) Its principal provisions limited ad valorem property taxes to 1 percent of a property's assessed valuation and limited increases in the assessed valuation to 2 percent per year unless and until the property changed hands. (Cal. Const., art. XIII A, §§ 1, 2.)

To prevent local governments from subverting its limitations, Proposition 13 also prohibited counties, cities, and special districts from enacting any

special tax without a two-thirds vote of the electorate. (Cal. Const., art. XIII A, § 4; *Rider* v. *County of San Diego* (1991) 1 Cal.4th 1, 6-7 [2 Cal.Rptr.2d 490, 820 P.2d 1000].) It has been held, however, that a special assessment is not a special tax within the meaning of Proposition 13. (*Knox* v. *City of Orland* (1992) 4 Cal.4th 132, 141 [14 Cal.Rptr.2d 159, 841 P.2d 144], and cases cited.) Accordingly, a special assessment could be imposed without a two-thirds vote.

In November 1996, in part to change this rule, the electorate adopted Proposition 218, which added articles XIII C and XIII D to the California Constitution. Proposition 218 allows only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge. (Cal. Const., art. XIII D, § 3, subd. (a)(1)-(4); see also Cal. Const., art. XIII D, § 2, subd. (a).) It buttresses Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on assessments, fees, and charges.

First, Proposition 218 defines an "assessment" as "any levy or charge upon real property . . . for a special benefit conferred upon the real property." (Cal. Const., art. XIII D, § 2, subd. (b).) It defines a "special benefit" as "a particular and distinct benefit over and above general benefits conferred on real property located in the district or to the public at large. General enhancement of property value does not constitute 'special benefit.' " (Cal. Const., art. XIII D, § 2, subd. (i).) Proposition 218 then provides that an assessment may be imposed only if (1) it is supported by an engineer's report (Cal. Const., art. XIII D, § 4, subd. (b)), (2) it does not exceed the reasonable cost of the proportionate special benefit conferred on each affected parcel (Cal. Const., art. XIII D, § 4, subds. (a), (f)), and (3) it receives, by mailed ballot, a vote of at least half of the owners of affected parcels, weighted "according to the proportional financial obligation of the affected property." (Cal. Const., art. XIII D, § 4, subds. (c)-(e).)

In general, an assessment already in existence on the effective date of Proposition 218 (preexisting assessment) must comply with Proposition 218 by July 1, 1997. Four specified classes of preexisting assessments, however, are "exempt from the procedures and approval process set forth in Section 4." (Cal. Const., art. XIII D, § 5.) This case turns on the meaning of one of these four exemptions.

Under article XIII D, section 5, subdivision (a) of the California Constitution (section 5(a)), a preexisting special assessment is exempt if it is "imposed exclusively to finance the capital costs or maintenance and operation expenses for *sidewalks, streets*, sewers, water, flood control, drainage

systems or vector control." (Italics added.) "Maintenance and operation expenses" are defined as "the cost of rent, repair, replacement, rehabilitation, fuel, *power, electrical current*, care, and supervision necessary to properly operate and maintain a permanent public improvement." (Cal. Const., art. XIII D, § 2, subd. (f), italics added.)[1]

A preexisting assessment which is not exempt could be reauthorized by taxpayer consent in one of two ways. First, it could be reauthorized as an assessment, provided it met Proposition 218's "special benefit" requirement, it was supported by an engineer's report, and it received a weighted majority vote of owners of the affected property in a mail election. (Cal. Const., art. XIII D, § 4.) Second, it could be reauthorized as a special tax, provided it received a two-thirds vote of the general electorate. (Cal. Const., art. XIII A, § 4; Cal. Const., art. XIII D, § 3, subd. (a)(2).)[2] Unless either properly reauthorized or exempt, however, a preexisting assessment is now unconstitutional. (Cal. Const., art. XIII D, § 5.)

Proposition 218 recited: "FINDINGS AND DECLARATIONS. The people of the State of California hereby find and declare that Proposition 13 was intended to provide effective tax relief and to require voter approval of tax increases. However, local governments have subjected taxpayers to excessive tax, assessment, fee and charge increases that not only frustrate the purposes of voter approval for tax increases, but also threaten the economic security of all Californians and the California economy itself. This measure protects taxpayers by limiting the methods by which local governments exact revenue from taxpayers without their consent." (Prop. 218, § 2, reprinted at Historical Notes, 2A West's Ann. Const. (1999 pocket supp.) foll. art. XIII C, p. 22.) It also stated: "LIBERAL CONSTRUCTION. The provisions of this act shall be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent." (Prop. 218, § 5; see *ibid.*)

---

[1]The other three exemptions, which are not involved here, apply to:

"Any assessment imposed pursuant to a petition signed by the persons owning all of the parcels subject to the assessment at the time the assessment is initially imposed." (Cal. Const., art. XIII D, § 5, subd. (b).)

"Any assessment the proceeds of which are exclusively used to repay bonded indebtedness of which the failure to pay would violate the Contract Impairment Clause of the Constitution of the United States." (Cal. Const., art. XIII D, § 5, subd. (c).)

"Any assessment which previously received majority voter approval from the voters voting in an election on the issue of the assessment. . . ." (Cal. Const., art. XIII D, § 5, subd. (d).)

[2]We disregard the possibility it could be reauthorized as a fee or charge, because "assessments" and "fees or charges" are supposed to be mutually exclusive. (Cal. Const., art. XIII D, § 2, subds. (b), (e).) However, if the so-called assessment qualified as a fee or charge, presumably it could be reauthorized as such.

## II

### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs in this action (plaintiffs) are three organizations which allegedly advocate tax reduction—Howard Jarvis Taxpayers Association, Paul Gann's Citizens Committee, and Riverside Taxpayer Revolt—and four individuals. The defendant is the City of Riverside (the City). Plaintiffs' complaint alleged that:

Prior to 1988, the City paid for electricity for streetlights out of its general fund. In 1988, pursuant to the Landscaping and Lighting Act of 1972 (Sts. & Hy. Code, § 22500 et seq.), it created the Street Light Assessment District (the District).[3] The District covers the entire City. The District levies an annual assessment, which almost all private property owners in the City must pay. The total annual assessment is approximately $3 million. The assessment is used to pay for electricity for streetlights.

On November 6, 1996, Proposition 218 became effective. On June 17, 1997, the City held an election on Measure EE, which proposed to continue the District. Measure EE received 50.5 percent of the vote. This was less than the two-thirds it would have needed to qualify as a special tax.

Plaintiffs filed a motion for summary adjudication of their cause of action for declaratory relief. A week later, the City filed a motion for judgment on the pleadings.

After hearing argument, the trial court granted the City's motion for judgment on the pleadings. It ruled: "Riverside's Street Light Assessment District is exempt from Proposition 218 under Article XIII D, Section 5(a)." It dismissed plaintiffs' motion for summary adjudication as moot. Accordingly, it entered judgment for the City.

## III

### A PREEXISTING STREETLIGHTING ASSESSMENT IS EXEMPT UNDER PROPOSITION 218

■ The issue before us arises in the context of an order granting judgment on the pleadings. "A defendant is entitled to judgment on the

---

[3]The complaint alleged that the District was created pursuant to the Benefit Assessment Act of 1982 (Gov. Code, § 54703 et seq.). Both sides now agree that this was a mistake and that it was actually created pursuant to the Landscaping and Lighting Act of 1972.

pleadings if the plaintiff's complaint does not state a cause of action. In considering whether a defendant is entitled to judgment on the pleadings, we look only to the face of the pleading under attack . . . . All facts alleged in the complaint are admitted for purposes of the motion, and the court determines whether those facts constitute a cause of action. The court also may consider matters subject to judicial notice. [Citations.]" (*Hunt* v. *County of Shasta* (1990) 225 Cal.App.3d 432, 440 [275 Cal.Rptr. 113]; see also Code Civ. Proc., § 438, subds. (c)(1)(B)(ii), (d).) We review an order granting judgment on the pleadings independently. (*Smiley* v. *Citibank* (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690], affd. (1996) 517 U.S. 735 [116 S.Ct. 1730, 135 L.Ed.2d 25].)

■ " 'We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. [Citation.] In the case of a constitutional provision adopted by the voters, their intent governs. [Citations.] To determine intent, " 'The court turns first to the words themselves for the answer.' " [Citation.]' " (*People* v. *Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163], quoting *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934], quoting *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406], quoting *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) " 'When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it.' [Citations.]" (*People* v. *Benson* (1998) 18 Cal.4th 24, 30 [74 Cal.Rptr.2d 294, 954 P.2d 557], quoting *People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) "If 'the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history.' [Citation.]" (*People* v. *Hazelton* (1996) 14 Cal.4th 101, 105 [58 Cal.Rptr.2d 443, 926 P.2d 423], quoting *People* v. *Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].)

■ The section 5(a) exemption applies to an "assessment imposed exclusively to finance the . . . maintenance and operation expenses for sidewalks [or] streets . . . ." (§ 5(a).) "Maintenance and operation expenses" are defined as including "the cost of . . . electrical current . . . necessary to properly operate and maintain a permanent public improvement." (Cal. Const., art. XIII D, § 2, subd. (f).)

Electrical current is necessary to operate streetlights; and streetlights, we believe, are necessary to operate streets and sidewalks. Streetlights make streets and sidewalks safer. Thus, they are analogous to traffic lights. Streets could be operated without traffic lights; many intersections—probably

most—have no traffic lights. Where traffic lights have been installed, however, they have been determined reasonably necessary to properly operate the intersection. If there were no traffic lights at all, though the streets could certainly continue to operate, there would be more accidents. Indeed, streetlights could even be likened to the quintessential example of a legitimate expense of the operation of streets and sidewalks—road striping. Many streets have no striping; but if there were no striping at all, though the streets could continue to operate, there would be more accidents. So it is with streetlights.[4]

Our conclusion finds support in the apparent purpose of the exemption. Plaintiffs claim that, in the wake of court decisions holding that Proposition 13 did not apply to special assessments, local governments went hog-wild: "Where once assessments were limited to financing streets, sidewalks, sewers and other capital improvements directly benefiting property, assessments soon began to be imposed for general governmental services, such as library services and football stadiums." (Italics and fn. omitted.) Proposition 218 was enacted to plug this loophole in Proposition 13 and to stop this rampant abuse of special assessments. The exemption therefore was intended, conversely, to carve out traditionally appropriate, nonabusive special assessments.

Streetlighting, however, like sidewalks, sewers and flood control, has traditionally been financed through special assessments. (*Knox* v. *City of Orland, supra*, 4 Cal.4th at p. 143.) In California, the history of special assessments for streetlighting goes back at least to 1905. (See, e.g., Stats. 1905, ch. 169, pp. 564-570; Stats. 1911, ch. 397, pp. 730-769; Stats. 1919, ch. 335, pp. 612-620.) Special assessments for streetlighting are by no means an abuse or a loophole. Thus, although the drafters of Proposition 218 did not exempt streetlighting assessments in so many words, it does not violate their evident intent to hold that a streetlighting assessment is exempt as an expense of the operation of streets and sidewalks.

In their reply brief, plaintiffs back away from the unequivocal position that the expense of streetlighting can *never* be an expense of maintaining and operating streets. For example, under the Improvement Act of 1911 (Sts. & Hy. Code, §§ 5000-6794), assessments may be imposed for, among other

---

[4]Plaintiffs argue that whether streetlighting is necessary to the operation of streets is a factual question, which could not be decided on a motion for judgment on the pleadings. We disagree. The real question is whether streetlighting is "necessary" within the meaning of Proposition 218. This is a question of statutory interpretation, which the trial court could decide as a matter of law. To the extent that it turns on the functions streetlights perform, those "facts" cannot reasonably be the subject of dispute, and the trial court was required to take judicial notice of them. (Evid. Code, § 451, subd. (f).)

things, both streets and streetlights. (Sts. & Hy. Code, §§ 5101, 5180, 5821.) Plaintiffs concede that a street maintenance assessment imposed under such a statute would be exempt, even if a portion of it went to pay for streetlighting. They argue, however, the assessment here was imposed under the Landscaping and Lighting Act of 1972, which allows assessments for streetlighting but not for streets. (See Sts. & Hy. Code, § 22525.) They conclude it was not exempt.

The wording of Proposition 218 provides no support for such a distinction. The section 5(a) exemption applies to "[a]ny assessment imposed exclusively to finance the capital costs or maintenance and operation expenses for sidewalks, streets, sewers, water, flood control, drainage systems or vector control." (§ 5(a).) Thus, it looks at the nature of the assessment, not the nature of the authorizing statute. Plaintiffs' concession necessarily means an assessment for street maintenance, including any portion used for streetlighting, is "imposed exclusively to finance . . . maintenance and operation expenses for . . . streets." But if so, then an assessment used entirely for streetlighting is likewise "imposed exclusively to finance . . . maintenance and operation expenses for . . . streets," and therefore exempt.

Plaintiffs rely on Proposition 218's direction that it "shall be liberally construed to effectuate its purposes of limiting local government revenue and enhancing taxpayer consent." (Prop. 218, § 5, reprinted at Historical Notes, 2A West's Ann. Const., *supra*, foll. art. XIII C, p. 22.) ▄ However, "[a] proviso that '[t]his section shall be liberally construed . . .' does not license either enlargement or restriction of its evident meaning. [Citations.]" (*People* v. *Cruz* (1974) 12 Cal.3d 562, 566 [116 Cal.Rptr. 242, 526 P.2d 250]; accord, *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 [128 Cal.Rptr. 673, 547 P.2d 449]; *Tomlin* v. *Cole* (1984) 152 Cal.App.3d 556, 559 [199 Cal.Rptr. 632].) Where "the statutes at issue are unambiguous . . . no resort to this command is required." (*Buhlert Trucking* v. *Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 1530, 1533, fn. 4 [247 Cal.Rptr. 190].)

Both sides cite various statutory definitions. We have not found these helpful. ▄ "A constitutional provision should be construed according to the natural and ordinary meaning of its words. [Citation.]" (*City and County of San Francisco* v. *County of San Mateo* (1995) 10 Cal.4th 554, 562-563 [41 Cal.Rptr.2d 888, 896 P.2d 181].) We recognize that "that rule has an important exception . . . : when a word used in a statute has a well-established *legal* meaning, it will be given that meaning in construing the statute." (*Arnett* v. *Dal Cielo* (1996) 14 Cal.4th 4, 19 [56 Cal.Rptr.2d 706, 923 P.2d 1].) ▄ Here, however, neither of the parties can point to any such well-established legal meaning.

For example, the City points out that Streets and Highways Code section 27 defines "maintenance" as including the "[o]peration of . . . illuminating equipment." (Sts. & Hy. Code, § 27, subd. (b).) This definition, however, by its own terms, applies exclusively to specified portions of the Streets and Highways Code. (Sts. & Hy. Code, § 27.) As plaintiffs note, a different portion of the Streets and Highways Code defines "maintenance" more strictly, as limited to "(A) patching and (B) overlay and sealing." (Sts. & Hy. Code, § 2126, subd. (d)(1).)[5]

Plaintiffs, on the other hand, point out that the Benefit Assessment Act of 1982 (Gov. Code, §§ 54703-54720) provides, in two distinct subdivisions, that (1) a local agency authorized to maintain streets may impose an assessment to pay for street maintenance (Gov. Code, § 54710, subd. (b)), and (2) a local agency authorized to provide streetlighting may impose an assessment to pay for the maintenance and operation of streetlighting (Gov. Code, § 54710, subd. (a)). It also contains slightly different provisions for street maintenance assessments than for streetlighting maintenance assessments. (Gov. Code, §§ 54711, subd. (a)(2) [assessments for street maintenance work may be spread over five years], 54716, subd. (c) [requiring mail notice of proposed street maintenance assessment].) These provisions of the Benefit Assessment Act of 1982 do not appear relevant to the assessment at issue here, which was adopted pursuant to the Landscaping and Lighting Act of 1972. Besides, they suggest, at most, that the operation of streetlights is not part of the *maintenance* of streets (a proposition we are not inclined to dispute). They shed no light on whether the operation of streetlights is part of the *operation* of streets.

Plaintiffs also point out that the Street Lighting Act of 1919 (Sts. & Hy. Code, §§ 18000-18193), which authorizes streetlighting assessments (Sts. & Hy. Code, §§ 18007, 18030, 18033), contains distinct definitions of "street" (Sts. & Hy. Code, § 18004.5) and "street lighting system" (Sts. & Hy. Code, § 18004). Once again, however, these definitions, by their own terms, apply exclusively to the Street Lighting Act of 1919. (Sts. & Hy. Code, § 18001.) And also, again, they shed no light on whether streetlighting can be considered an *expense of the maintenance or operation* of streets and sidewalks.

Finally, plaintiffs claim the City has somehow conceded the assessment is not exempt. First, plaintiffs claim various city officials made statements

---

[5]For this reason, we decline the City's invitation to rely on *Fischer* v. *County of Shasta* (1956) 46 Cal.2d 771 [299 P.2d 222]. There, the Supreme Court indicated a special road maintenance district, formed pursuant to Streets and Highways Code section 1550.1 et seq., could maintain and operate streetlighting. It relied on the definition of "maintenance" in section 27 of the Streets and Highways Code. (*Fischer* v. *County of Shasta, supra*, at p. 774.) This does not assist us in construing Proposition 218.

admitting that Proposition 218 could or would abrogate the assessment. Because this appeal comes before us on a motion for judgment on the pleadings, we cannot consider these statements as evidence. We can consider them, however, to the extent they show that plaintiffs should have been given leave to amend their complaint. (See *Smiley* v. *Citibank, supra,* 11 Cal.4th at p. 164, fn. 18.) In other words, if plaintiffs amended their complaint so as to allege that city officials made these statements, would the complaint state a cause of action?

Plaintiffs cite no authority for the proposition that these admissions would be relevant. They would not. The issue presents a pure question of law. Plaintiffs would not be allowed to offer an expert's opinion that the assessment was or was not exempt under Proposition 218. (See *Summers* v. *A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178-1182 [82 Cal.Rptr.2d 162]; *Downer* v. *Bramet* (1984) 152 Cal.App.3d 837, 841-842 [199 Cal.Rptr. 830].) A fortiori, they cannot offer such opinions from hearsay declarants who have never been qualified as experts. The fact that these opinions were expressed by city representatives makes no difference. The City could not be estopped by its representatives' statements (see *Hughes* v. *Board of Architectural Examiners* (1998) 17 Cal.4th 763, 793-794 [72 Cal.Rptr.2d 624, 952 P.2d 641] [estoppel "ordinarily will not apply against a governmental body . . ."]), even if plaintiffs could prove detrimental reliance, which they do not even claim. For similar policy reasons, these representatives' admissions are not binding on the City.

Plaintiffs argue there is evidence the drafters of Proposition 218 relied, at least in part, on these statements by city officials in believing that the assessment was not exempt. Plaintiffs conclude these statements are relevant to the intent of the drafters and, hence, to the true meaning of section 5(a). We fail to see how others' statements interpreting what the drafters had already written could retroactively affect the drafters' intent in writing it. Moreover, "[t]he opinion of drafters or of legislators who sponsor an initiative is not relevant since such opinion does not represent the intent of the electorate and we cannot say with assurance that the voters were aware of the drafters' intent. [Citations.]" (*Taxpayers to Limit Campaign Spending* v. *Fair Pol. Practices Com.* (1990) 51 Cal.3d 744, 764-765, fn. 10 [274 Cal.Rptr. 787, 799 P.2d 1220].) Accordingly, city officials' alleged admissions are irrelevant.

Second, plaintiffs note that the City tried to have the assessment approved as a special tax—unsuccessfully, as Measure EE failed to gain a two-thirds majority vote. This does not necessarily mean the City actually believed the assessment was invalid under Proposition 218. The City was entitled to take

a "suspenders and belt" approach—to try to reauthorize the assessment as a special tax, and thereby to forestall litigation, while preserving its position that the assessment was exempt, just in case its efforts failed and litigation did ensue. In any event, as we have already noted, city officials' opinions that Proposition 218 abrogated the assessment were irrelevant.

We conclude the City's preexisting streetlighting assessment is exempt under Proposition 218.[6]

## IV

### DISPOSITION

The judgment is affirmed. The City shall recover costs on appeal against plaintiffs.

Ramirez P. J., and McKinster J., concurred.

Appellants' petition for review by the Supreme Court was denied October 20, 1999.

---

[6]Plaintiffs alleged the assessment was invalid for two separate reasons: (1) it had not been reauthorized by July 1, 1997, and it was not exempt, and (2) it failed to confer a special benefit on the burdened property over and above the general benefit to the public at large.

When the City moved for judgment on the pleadings, it asserted that, if the assessment was exempt at all, it was exempt from both these requirements. Plaintiffs never disputed this assertion. Even in this appeal, plaintiffs do not contend that, even if the assessment was exempt from the reauthorization requirement, it was not exempt from the special benefit requirement. Accordingly, we deem any such contention long since waived. We do not address it, and we express no opinion on it.