Filed 12/16/20  Southfork Ranch v. Bunn CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SOUTHFORK RANCH, LLC, et al.,<br><br>Plaintiffs, Appellants and Cross-Appellants,<br><br>v.<br><br>DAVID BUNN et al.,<br><br>Defendants, Respondents and Cross-Respondents. | 2d Civ. No. B279391<br>(Cons. w/ No. B280994)<br>(Super. Ct. No. 56-2014-00449856-CU-BC-VTA)<br>(Ventura County)<br><br>ORDER DENYING PETITION FOR REHEARING AND MODIFYING OPINION<br>(No Change in Judgment) |

THE COURT:

It is ordered that the opinion filed herein on November 17, 2020, be modified as set forth below:

1.  On page 2, the first two full paragraphs are consolidated and modified to read as follows:  Southfork and King, the respective owners of Parcels B and C, sued Parcel A's owners, Bunn & Birrell, for alleged interference with their use of the

Parcel A easements.  Following trial, the court concluded appellants had "failed to introduce sufficient credible evidence" to prove their causes of action for interference with easement, trespass and declaratory relief.  It also found Bunn & Birrell have equal rights to a share of the water generated by the new water facilities and ruled in their favor on their cross-complaint challenging appellants' construction of those facilities.

2.  On page 4, the final sentence in the last full paragraph is deleted in its entirety and the second sentence is modified, so that the entire paragraph now reads:  In 2011, appellants brought actions against Bunn & Birrell and TNC in what we identify as *Southfork I*.  Among other things, appellants requested the right to remove part of the revetment wall and groins.  Bunn & Birrell intervened in the action against TNC.

3.  On page 5, the second and third sentences in the first full paragraph are deleted in their entirety and the word "here" is added at the end of the last sentence, so that the entire paragraph now reads:  Following trial in 2013, the trial court found that appellants cannot alter or remove the riverbank protections.  *Southfork I* became final when appellants abandoned their appeal from the judgment.  No attorney fees or costs arising from that case are at issue here.

4.  On page 25, the final full paragraph is modified to include the following as footnote 7 at the end of the paragraph:  In their petition for rehearing, appellants contend our opinion affirming the trial court's judgment in *Southfork III* eviscerates the trial court's earlier judgment in *Southfork I*.  To the extent

the *Southfork I, II and III* judgments require harmonization, as appellants now claim, that issue pre-existed our decision and should have been raised in the briefs. (*Hunt v. County of Shasta* (1990) 225 Cal.App.3d 432, 446, fn. 12; *Brown v. Superior Court* (1982) 137 Cal.App.3d 778, 782.)

    5. On page 31, footnote 7 shall be renumbered as footnote 8.

    No change in judgment.
    Appellants' petition for rehearing is denied.

---

GILBERT, P.J.        YEGAN, J.        PERREN, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| SOUTHFORK RANCH, LLC, et al.,<br><br>Plaintiffs, Appellants and Cross-Appellants,<br><br>v.<br><br>DAVID BUNN et al.,<br><br>Defendants, Respondents and Cross-Respondents. | 2d Civ. No. B279391<br>(Cons. w/ No. B280994)<br>(Super. Ct. No. 56-2014-00449856-CU-BC-VTA)<br>(Ventura County) |

　　　　Appellants Southfork Ranch, LLC (Southfork) and R. Eric King and respondents David Bunn and Ellen Birrell (collectively Bunn & Birrell) farm on three adjoining parcels of land in Ventura County.  The parcels, known as Parcels A, B and C, share a water facilities system on the Santa Clara River pursuant to the Southfork Ranch Declaration of Covenants, Conditions and Restrictions (CC&R's).  Among other things, the

CC&R's created an easement on Parcel A, which allows the owners of Parcels B and C to cross that parcel to access their land. The CC&R's also permit the owners of Parcels B and C to receive water from the water facilities system located on Parcel A.

Southfork and King, the respective owners of Parcels B and C, have twice unsuccessfully sued Parcel A's owners, Bunn & Birrell, for alleged interference with their use of the Parcel A easements. This is their third attempt. Once again, they are unsuccessful.

Following trial, the court concluded appellants had "failed to introduce sufficient credible evidence" to prove their causes of action for interference with easement, trespass and declaratory relief. It also found Bunn & Birrell have equal rights to a share of the water generated by the new water facilities and ruled in their favor on their cross-complaint challenging appellants' construction of those facilities.

Over appellants' objections, the trial court awarded Bunn & Birrell a total of $866,229.50 in contract-based attorney fees and costs. (See Civ. Code, 1717.)[1] Of this sum, $376,638.10 is attributable to one of the earlier *Southfork* cases. In addition, another respondent, The Nature Conservatory (TNC), was awarded $585,865.83 in fees and expenses.

In this consolidated appeal, appellants contest both the post-trial judgment in Bunn & Birrell's favor and the awards of fees and costs to respondents. As to the merits, appellants argue the trial court misinterpreted the CC&R's regarding the parties'

---

[1] All further statutory references are to the Civil Code unless otherwise stated.

2

water rights.  They claim Bunn & Birrell repudiated any rights they had.  Appellants further contend that the court applied the wrong burden of proof on their interference with easement claim and that it exceeded its defined powers by issuing a list of Declarations outlining the parties' rights and obligations under the CC&R's.[2]

As for the attorney fees, expert fees and costs awards, appellants challenge both the propriety and amount of the trial court's orders.  They contend respondents' claims sound in tort, rather than contract, and that they needlessly over-litigated portions of the case and inappropriately allocated certain fees and expenses.

We conclude appellants have failed to demonstrate error in either aspect of this appeal.  We do, however, modify the two orders awarding expert fees of $14,780.45 to Bunn & Birrell to clarify that those fees may only be collected once.

## I. LITIGATION HISTORY[3]

Adopted in 1992, the CC&R's created water access rights by easement for three contiguous parcels of land.  Parcel A abuts the Santa Clara River, while Parcels B and C do not.  Water for the three parcels was pumped from a well into tanks and

---

[2] TNC is not a party to the merits portion of this appeal.  It is a party to appellants' challenge to the fees and costs awards.

[3] Some of this history is adapted from our prior opinion in an appeal involving the same parties, *Southfork Ranch, LLC v. The Nature Conservancy* (Jan. 17, 2018, B267157) [nonpub. opn.] (*Southfork II*).  Facts specific to the current litigation and the fee and costs awards are detailed in the Discussion section.

dispersed through pipes. The water facilities were located on Parcel A.

After the CC&R's were adopted, floods destroyed the water well and eroded the riverbank along Parcel A. An amendment to the CC&R's, recorded in 1996, moved the well site upstream and established a new easement. At the same time, the then-owner of Parcel A constructed a revetment wall several hundred feet in length to protect the riverbank. Flooding in 1997-1998 destroyed 60 percent of that wall. A new wall, 9 to 14 feet high, was constructed in 1999 and groins of caged rocks were placed near its base.

Southfork purchased Parcel B in 1996, after the CC&R's had been amended. King bought Parcel C in 2000. Bunn & Birrell purchased Parcel A in 2005, while the County of Ventura (County) was suing the then-owner of Parcel A for constructing the unauthorized revetment wall. The County settled the lawsuit by stipulation in 2005. The judgment required Bunn & Birrell to repair and restore the wall structures along the river, to comply with watershed protection standards and to transfer 52 riparian acres of Parcel A to TNC. Part of Parcel A (now known as Parcel AAA) was transferred to TNC in 2009, the same year Bunn & Birrell completed the necessary restoration work.

### A. *Southfork I*

In 2011, appellants brought actions against Bunn & Birrell and TNC in what we identify as *Southfork I*. Appellants requested the right to remove part of the revetment wall and groins and to force Bunn & Birrell to remove all obstructions preventing appellants from constructing a new well. Bunn & Birrell intervened in the action against TNC. Parcel A's water rights under the CC&R's were not at issue.

4

Following trial in 2013, the trial court found that appellants cannot alter or remove the riverbank protection structures. The court denied appellant's motions for attorney fees. It found that "neither party prevailed sufficiently to justify" such an award. *Southfork I* became final when appellants abandoned their appeal from the judgment. No attorney fees and costs arising from that case are at issue.

### B. Southfork II

Appellants filed *Southfork II* in 2014, alleging interference with easement and demanding removal of the revetment wall, groins and other obstructions. The complaint did not mention *Southfork I*. The trial court granted summary judgment in TNC's favor based upon res judicata principles. It also granted Bunn & Birrell's motion for judgment on the pleadings. We affirmed, agreeing that *Southfork II* was an improper collateral attack on the 2013 judgment. (*Southfork II, supra,* B267157.)

The trial court awarded TNC $511,103.60 in attorney fees and $74,762.23 in costs, for a total of $585,865.83. It awarded Bunn & Birrell $376,638,10 in attorney fees and $14,780.45 in expert fees.

### C. The Current Litigation (Southfork III)[4]

In their second amended complaint, appellants again asserted interference with easement, alleging their use of and access to the roadway and water easements are obstructed by Bunn & Birrell's water pipes, avocado and citrus trees, shrubs, fencing, telephone lines, a fertilizer injector and concrete blocks. Bunn & Birrell cross-complained for breach of the CC&R's and declaratory relief. The trial court held a 17-day bench trial in 2015.

---

[4] The current litigation was severed from *Southfork II*.

5

The trial court determined appellants had failed to prove their causes of action. The statement of decision emphasized the parties' dependence on the river water and noted the CC&R's assure that each parcel has access to water through wells, tanks, pipelines, pumps and utility lines on Bunn & Birrell's land. The court found Southfork responsible for maintaining the water facilities, but clarified it is only entitled to reimbursement for costs based on each parcel's planted acreage. Southfork improperly charged Bunn & Birrell based on water usage and then refused their requests for records justifying the charges.

The trial court further found appellants had "decided years ago to develop and construct new wells in order to increase the amount of water taken from the river, without the consent or involvement of Bunn & Birrell." While this action was pending, appellants constructed the new well and tanks with the intent to exclude Bunn & Birrell from that system. The court enjoined appellants' activities in 2014, noting they had misled federal and state agencies about the construction and the plan to increase their water usage.

Prior to trial, appellants claimed the old well was failing and obtained court approval to continue construction on the new well. In fact, the new well was not operational at the time of trial because it lacked sufficient electrical power to function.

The trial court entered judgment for Bunn & Birrell at the close of appellants' case. It determined that appellants cannot install new water facilities on Parcel A for their exclusive use, and that they failed to introduce credible evidence showing the new well is permitted by government agencies or that the alleged obstructions are within the easement areas or interfere unreasonably with access to or use of the easements. For the

6

same reason, the court found appellants had not proven their trespass claim.

The trial court also entered judgment for Bunn & Birrell on their cross-complaint. It made 28 Declarations regarding the parties' rights and responsibilities under the CC&R's. The Declarations govern the connections to the water facilities; the allocation of water and costs associated with maintaining the water facilities; the need for unanimous approval for new water facilities; use of the easements; appellants' need to obtain permits from regulatory agencies and to remove any unlawful construction; and appellants' obligation to make the new well operational. Declaration 29 directs the appointment of a receiver to enforce the court's rulings.

The trial court awarded Bunn & Birrell the $866,229.50 in attorney fees they requested. That amount includes $362,023.50 of the fees awarded to them in *Southfork II*.

## II. DISCUSSION

Southfork and King appeal the orders awarding attorney fees and costs in *Southfork II* and *III*, as well as the judgment on the merits in *Southfork III*. We address the latter argument first.

### A. Challenge to Southfork III Judgment

#### 1. Standard of Review

A judgment "'is *presumed correct*.'" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).) Appellants bear the burden of overcoming this presumption. (*Ekstrom v. Marquesa at Monarch Beach Homeowners Assn.* (2008) 168 Cal.App.4th 1111, 1121.) We interpret de novo the CC&R's that govern the parties' rights and obligations. (*Ibid.*; *Starlight Ridge South Homeowners Assn. v. Hunter-Bloor* (2009) 177 Cal.App.4th 440, 445.)

7

Where, as here, the trial court concludes the plaintiffs failed to prove their claims by the close of their evidence, "'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question [is] whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic*); *Eisen v. Tavangarian* (2019) 36 Cal.App.5th 626, 647.)

## 2. *Bunn & Birrell Did Not Forfeit Their Water Rights Under the CC&R's*

Appellants argue Bunn & Birrell forfeited their right to use the water facilities when they transferred Parcel AAA to TNC by grant deed in 2009. They claim the transfer deprived Bunn & Birrell of standing to sue or was an anticipatory repudiation of their obligations under the CC&R's. Neither claim has merit.

Grants are interpreted in the same manner as contracts. (§ 1066; *Southern California Edison Co. v. Severns* (2019) 39 Cal.App.5th 815, 822.) The objective in construing a conveyance with a reservation of rights is to give effect to the grantor's intent. (*Willard v. First Church of Christ, Scientist* (1972) 7 Cal.3d 473, 476-477.) The language in the conveyance and relevant extrinsic evidence are used to determine that intent. (*Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37-38.) If the court admits extrinsic evidence, its finding as to the credibility of the evidence is binding on appeal. (*Pierpont Inn, Inc. v. State of California* (1969) 70 Cal.2d 282, 294.) "To the extent resolution of the appeal turns on the trial

court's factual findings, we review such findings under the substantial evidence standard." (*Severns*, at p. 822.)

The trial court found that the TNC grant deed does not contain "any language that can reasonably be construed to extinguish Bunn and Birrell's water rights." Appellants "did not introduce evidence sufficient to prove that [their] unmistakable intent . . . was to subordinate, extinguish or forfeit their water rights" through the grant deed.

Attachment 4 to the grant deed is a "Reservation of Certain Water Rights and Reservation of Related Access Easement." The first sentence reserves to Bunn & Birrell subsurface waters and "the riparian and appropriative water rights associated with the Water Well Access Easement . . . for domestic and agricultural purposes, as described in [the CC&R's]." It would be unreasonable to conclude that a document expressly reserving such water rights also was intended to forfeit those same rights, particularly when water is integral to Parcel A's farming enterprise.

In addition, we agree that the second sentence in the reservation of rights clause does not affect the language reserving Bunn & Birrell's water rights under the CC&R's.[5] Even assuming there is an ambiguity in the deed, Bunn, Birrell and TNC clarified their intent by mutually correcting Attachment 4 to delete the second sentence and to confirm their intent to preserve Bunn & Birrell's "riparian and appropriative water

_____

[5] The second sentence states: "The Reserved Water Rights do not include: any right of surface entry or surface drilling, except as described below in the Water Well Access Easement; or any right to dam, divert or appropriate surface water from the Santa Clara River."

9

rights."  As the trial court observed, "'[f]orfeitures are not favored by the courts, and if an agreement can be reasonably interpreted so as to avoid a forfeiture, it is the duty of the court to avoid it. The burden is upon the party claiming a forfeiture to show that such was the unmistakable intention of the instrument. . . .  A contract is not to be construed to provide a forfeiture, unless no other interpretation is reasonably possible.'  [Citation.]"  (See *Boston LLC v. Juarez* (2016) 245 Cal.App.4th 75, 85-86.)

King argues the 2009 grant deed was an "anticipatory repudiation" of Bunn & Birrell's obligations under the CC&R's. King's failure to raise this issue in the trial court forfeits the issue on appeal.  (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1381; *Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 412 ["Generally, failure to raise an issue or argument in the trial court *waives* the point on appeal"].)

Although the CC&R's were created before the parties purchased their parcels, the various covenants in that document run with the land.[6]  (§ 1460 [covenants running with the land are appurtenant to an estate in real property and bind successive owners].)  The purpose of the CC&R's was "to assure that each of the . . . parcels comprising the Southfork Ranch retain adequate rights of access to the respective parcels and to the water facilities . . . located upon and adjacent to the Southfork Ranch."

Appellants cite no authority for their assertion that covenants running with the land, which are binding on successive

---

[6] Section 7 states the CC&R's "run with the Ranch and Parcels, and shall be binding upon all parties having or acquiring any right, title, or interest therein or any part thereof, and shall be for the benefit of each owner of any portion of said Ranch and the Parcels or any interest therein, and shall inure to the owners thereof, their transferees, heirs, successors and assigns."

owners, may be forfeited by one owner without amending the CC&R's.  To the contrary, changes to the CC&R's require "execution and recordation of an amendment by all owners of the Parcels."  There is no such recorded amendment excluding or altering Parcel A's water rights.  (See 6 Miller & Starr, Cal. Real Estate (4th ed. 2019) §§ 16:42-16:44 [describing the limited methods of amending or terminating restrictions]; *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 365-366 ["[I]t is reasonable to conclude that property conveyed after [CC&R's] are recorded is subject to those restrictions even without further mention in the deed"].)

Southfork contends Bunn & Birrell violated the California Environmental Quality Act and misled the County by hiding their intent to "construct as many water wells as they desire[] . . . ."  Not only does Southfork lack standing to assert these claims on the County's behalf, but its assertions are speculative at best.  The record confirms Bunn & Birrell's unambiguous desire to share a water well with appellants, as provided in the CC&R's.  There is no evidence they intend to build costly, duplicative wells.

 *3. Appellants Cannot Exclude Bunn & Birrell*
  *From Using the Water Facilities*

Appellants' efforts to use the easements to build their own water facilities on Parcel A and to deprive Bunn & Birrell of water from those facilities defeat the purpose and spirit of the CC&R's.  The document repeatedly confirms its intent to benefit *all* parcels, not just appellants' parcels, and that the rights and restrictions apply to existing and replacement water facilities.

The CC&R's define water facilities as "the water well, *all replacement* water wells, *all* existing or *replacement* pumps,

11

pipelines, water storage tanks and utility lines *existing upon or added subsequent to this agreement*, and serving Parcels A, B and C . . . ." (Italics added.) The water well means "the existing water extraction and conveyance system, or *any replacement systems, located adjacent to Parcel A* in the Santa Clara River." (Italics added.) Appellants informed the trial court before trial that they are building a replacement well because the old one is failing.

Section 4.1 of the CC&R's provides that the water facilities "*shall collectively be used* for the benefit of Parcels A, B and C." (Italics added.) Likewise, a roadway easement on Parcel A "is hereby reserved for the benefit of Parcels A, B and C . . . for the purpose of installing, maintaining, repairing and replacing any components of the Water Facilities including, but not limited to, water wells, water storage tanks, pipelines, pumps, water meters, utility poles, utilities lines and any other components commonly associated with the Water Facilities." The CC&R's also authorize the formation of an "owners' association" for the benefit of the three parcels any owners created by subdivision.

The CC&R's specifically reserve "for the benefit of Parcels A, B and C, together with all lots created as a result of the subdivision of the Parcels, the right to take water from the Water Well. The owners of Parcels A, B and C shall each have the nonexclusive right to use to use water from the Water Well, *or any replacement water well*, for the purposes of irrigating agricultural crops and landscaping, permanent pasture, and for watering any livestock upon Parcels A, B and C." (Italics added.)

The location of "the Water Well" is specified in the 1992 CC&R's, which do not mention separate wells for each parcel. After flooding destroyed the original well, it had to be moved.

12

The 1996 amendment to the CC&R's states "it is necessary to significantly change the water facilities which necessitates that the Declaration be amended by this First Amendment . . . ." The CC&R's thus acknowledge that moving or replacing water facilities requires an amendment. The 1996 amendment incorporates exhibits specifying the location of the new well and states that Parcel C may eventually be assessed "[i]f the owner of Parcel C later connects into the Water Facilities . . . ."

In 2013, Southfork's principal, Robert McDonough, wrote a letter to the Department of Fish and Wildlife, the agency responsible for permitting riverbed construction. McDonough conceded "the current water diversion as well as any new diversion is communal and therefore not solely under the auspices of Southfork Ranch or any one individual. The associated rights and needs are those of all members of the CC&Rs. Consequently, I cannot unilaterally restrict them. *Any changes to the existing usage or rights defined within the CC&Rs requires an amendment to the document, signed by all members.*" (Italics added.)

Two years later, appellants took the opposite position at trial. The trial court correctly rejected their claim that they can build a replacement well without Bunn & Birrell's participation and prevent them from using it. The plain language of the CC&R's, i.e., that the water facilities "shall collectively be used for the benefit of Parcels A, B and C," does not support the interpretation that the facilities benefit only Parcels B and C. The CC&R's explicitly foresee construction of "replacement water wells" and "replacement pumps, pipelines, water storage tanks and utility lines," and allocate the costs of replacement, repair, maintenance among the three parcels.

Section 3 of the CC&R's grants Parcels A, B and C "the *nonexclusive right* to use water" from the existing well or any replacement well. (Italics added.) Appellants seek an exclusive right to use water from the replacement well. An "exclusive right" is "[o]ne which only the grantee thereof can exercise, and from which all others are prohibited or shut out." (Black's Law Dict. (6th ed. 1990) p. 565.) Neither we nor the trial court can transform language affording Parcels A, B and C a "nonexclusive right" to well water into an exclusive right for only Parcels B and C. (*Abers v. Rounsavell* (2010) 189 Cal.App.4th 348, 361-362 ["'We do not have the power to create for the parties a contract that they did not make and cannot insert language that one party now wishes were there'"]; accord *Pacific Employers Ins. Co. v. Superior Court* (1990) 221 Cal.App.3d 1348, 1358-1359.)

In sum, the CC&R's do not contemplate that the easements they created will be burdened by separate water facilities for each parcel, plus any new parcels created by subdivision. Moreover, nothing in the record suggests the applicable government agencies would permit multiple water facilities in the environmentally sensitive river.

### 4. Interference with Easement

A servient tenement owner "may make any use of the land that does not interfere unreasonably with the easement." (*Pasadena v. California-Michigan Land & Water Co.* (1941) 17 Cal.2d 576, 579.) In other words, users "have to accommodate each other." (*Applegate v. Ota* (1983) 146 Cal.App.3d 702, 712.) If they do not, the court may order removal of obstructions that unreasonably interfere with the easement. (*Id.* at pp. 712-713.) The existence of an interference is a question of fact. (*Scruby v. Vintage Grapevine, Inc.* (1995) 37 Cal.App.4th 697, 703 (*Scruby*);

14

*Pacific Gas & Elec. Co. v. Hacienda Mobile Home Park* (1975) 45 Cal.App.3d 519, 528.)

The trial court found "a fundamental failure of the plaintiff[s] to meet their burden of proof" on their interference claim, entitling Bunn & Birrell to judgment as a matter of law. It found no credible evidence to establish (1) the easement boundaries or obstructions within them; (2) that items in the water facilities easement interfere with an intended use; (3) that obstructions interfere with appellants' use of the roadway easement; (4) that appellants may use the easements to unilaterally install water facilities for themselves without Bunn & Birrell's approval; (5) that the new water facilities are properly permitted by regulatory agencies; or (6) that appellants were denied access to the easements.

King claims the easement boundaries were not contested at trial. We disagree. The legal description of the boundaries was not disputed. The issue was proving the alleged obstructions appear within those boundaries. The CC&R's define the easement areas by metes and bounds. A surveyor or other expert typically must establish the location of the easement based on that description. (See, e.g., *SLPR, L.L.C. v. San Diego Unified Port Dist.* (2020) 49 Cal.App.5th 284, 311; *Ranch at the Falls LLC v. O'Neal* (2019) 38 Cal.App.5th 155, 185, fn. 27.)

The trial court was unable to determine from photographs of a mile-long roadway with twists and turns whether "trees and pipes and rocks and cement blocks that appeared at various places" encroach into the easements. It explained: "[W]hen it comes to interpreting a metes and bounds description of the boundary for an easement . . . , I need testimony from a licensed

surveyor who can tell me, [t]his is the boundary of the easement" and could state that a tree, cement block or pipe encroaches.

The trial court had warned appellants that a surveyor's testimony would be required if the alleged obstructions were not "obvious," and found that appellants had failed to demonstrate that the obstructions in the easements were obvious. (See *Sonic*, *supra*, 196 Cal.App.4th at p. 466.) In the absence of expert testimony, the court did not "know how [it] could possibly conclude [there's] an encroachment," regardless of its reasonableness.

Appellants point to King's testimony regarding his understanding of the easements' placement, but "[m]atters that go beyond common experience and require particular scientific knowledge may not properly be the subject of lay opinion testimony." (*People v. DeHoyos* (2013) 57 Cal.4th 79, 131.) "Surveyors and civil engineers, like other experts, may give testimony on questions involving matters of technical skill and experience with which they are peculiarly acquainted. [Citations.]" (*Richfield Oil Corp. v. Crawford* (1952) 39 Cal.2d 729, 741; *Bloxham v. Saldinger* (2014) 228 Cal.App.4th 729, 737-738.) "The [expert] testimony is not accepted for the purpose of varying or contradicting the terms of the deed, but to aid the trial court in its difficult task of translating the words of the deed into monuments on the surface of the earth, in accord with accepted surveying practices." (*Richfield Oil Corp.*, at p. 741.) As the trial court observed, "a surveyor has the knowledge, training, experience and licensure to plot [the metes and bounds] on the ground and take a picture of it. And that's the kind of evidence that ordinarily carries the day . . . ."

Although King was not prohibited from giving his opinion regarding the easements' boundaries, the trial court did not find his testimony helpful. Once again, the issue was not "the sincerity of [King's] belief," but rather "the accuracy of his assessment." We are bound by this credibility determination. (*Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 925; *Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613.)

In sum, appellants have not shown that their evidence was uncontradicted, unimpeached and left no room for the trial court to determine it was insufficient to support a finding in their favor. (*Sonic, supra*, 196 Cal.App.4th at p. 466.) The lack of expert evidence on a critical element of the interference claim defeated that cause of action as a matter of law.

Nor are we persuaded by appellants' argument that they are entitled to a new trial because the trial court "arbitrarily chang[ed] the rules after [a]ppellants rested," thereby denying them "their due process right to a fair hearing." They seek an opportunity to present on remand the expert evidence they did not have available at trial. Appellants waived this argument, however, by failing to request a continuance. This was not a jury trial. The court had discretion to continue the trial to allow for discovery and presentation of expert testimony. (See *Noble v. Tweedy* (1949) 90 Cal.App.2d 738, 742 ["[A] party's right to a new trial upon the ground of surprise" is generally "waived if the alleged surprise is not called to the court's attention by a motion for a continuance or other relief"].)

*5. The Trial Court Did Not Rewrite the CC&R's*

Appellants assert the trial court either misinterpreted or rewrote the CC&R's. We disagree.

17

The trial court ruled that Parcel A's "right to take and use water from the Water Well is unrestricted and equal to that of any other Parcel," and that Parcel B cannot impose a water schedule, allocate water or modify the well. Appellants misread this ruling as mandating equality of water allocation.

The judgment does not state that each parcel is allocated the same amount of water. Instead, it gives the parcels equal rights to take advantage of the well. This is consistent with the CC&R's, which state that the water facilities "shall collectively be used for the benefit of Parcels A, B and C." There is no water use allocation among the parcels except to limit such usage to crops, landscaping, pasture and livestock.

The CC&R's presume the parcel owners will use the water in an equitable and reasonable manner. Usage is "limited to such water as shall be reasonably required for the beneficial use to be served . . . ." (Cal. Const., art. X, § 2; see *Light v. State Water Resources Control Bd.* (2014) 226 Cal.App.4th 1463, 1479 ["rule of reasonableness" governs water usage].) King's concern that Bunn & Birrell will unreasonably consume water is not supported by the record.

Southfork violated the CC&R's by partially disconnecting Parcel A from the water facilities, thereby reducing Bunn & Birrell's water access, and also by giving water to Parcel C even though it has no right to water unless and until it connects to the water system. The judgment directing appellants to cease these violations is consistent with the CC&R's.

*6. Consent is Required to Build New Water Facilities*

The trial court concluded that Parcel B's authority is limited to keeping the water facilities in good condition and repair and that unanimous approval of all parcels is required

18

before any non-maintenance work is performed, including the development of additional water facilities. Once again, this ruling is consistent with the CC&R's, which require "the owner of Parcel B [to] provide maintenance services for the Water Facilities in order to keep the Water Facilities in good condition and repair . . . ." The cost of maintaining and repairing the water facilities is allocated among the parcels by formula, which may be modified if Parcel C (King) connects to the water facilities or if the acreage under irrigation changes.

If Parcel B incurs "extraordinary expenses" over $4,000, it "shall obtain an itemized written estimate of the costs involved. This estimate, together with the plans and specifications of the subject of the proposed expenditure, shall be submitted to the owners of Parcels A and C, and such owners shall have ten (10) days to object to the costs so itemized." Disputes over extraordinary costs are resolved by the vote of any two parcels, except that Parcel C has no right to object or any obligation to pay unless it elects to connect to the water facilities.

Constructing *new* water facilities is not "maintenance" of existing facilities to keep them "in good repair." The trial court found Southfork "admitted during trial that the development of a new well is not covered by the CC&Rs." The CC&R's do not contemplate construction of new water facilities at the discretion of Parcel B or any single parcel. Authorizing such construction requires an amendment to the CC&R's detailing what will be constructed and who will pay for it. Amendment of the CC&R's also requires unanimous consent unless an owners' association is established to resolve such issues.

Southfork speculates that Bunn & Birrell will prevent the construction of a new well, thereby destroying its ability to farm.

19

Assuming the old well is failing, as appellants claim, Bunn & Birrell also will need water from another source. This action involves their right to participate in the decisions for a replacement well and to receive water from it. The CC&R's ensure all parcels will have collective, nonexclusive use of the water facilities. They also "''impose[] upon each party a duty of good faith and fair dealing in its performance and its enforcement" [Citation.]'" (*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 371-372.)

The trial court properly concluded appellants had violated the CC&R's collective water rights provisions by constructing a new well without Bunn & Birrell's approval as to either location or cost. Because appellants had acted "officiously" in circumventing Parcel A's water rights, the court declined their request for compensation for the well construction. We agree appellants should not be rewarded "for their rogue behavior."

*7. Parcel C's Water Rights*

The trial court found that Parcel C had never connected to the water facilities, as required by section 4.7 of the CC&R's. Consequently, King must pay for the installation and maintenance of pumps and water lines, cannot irrigate his land with Parcel B's water and cannot vote on or object to extraordinary maintenance costs unless he connects to the water facilities.

Appellants contend Parcel C has a prescriptive right to use water produced on Parcel A. They emphasize that Southfork began using water from Parcel B's tank to irrigate Parcel C in 1996. King purchased Parcel C in 2000 and continued using water from Parcel B's tank without connecting to the system in

the manner required by the CC&R's.  After purchasing Parcel A, Bunn & Birrell objected to Parcel C's water use.  Southfork concedes its conduct in transporting water to Parcel C is "a use not permitted by the CC&R's."

Noting appellants had failed to plead their prescriptive rights claim or to timely present it before trial, the court found they had "waived the right to raise such a claim at this late stage of these proceedings."  Southfork argues it preserved the claim by asserting the statute of limitations as an affirmative defense.

We conclude the trial court correctly rejected this untimely claim.  A prescriptive water right requires proof of an actual, open and notorious use that is hostile and adverse to the owner under a claim of right, and continuous and uninterrupted for five years.  (*Brewer v. Murphy* (2008) 161 Cal.App.4th 928, 938.) Proving these elements presents a question of fact for the trial court.  (*Ibid.*)

Had the trial court allowed this belated claim, Bunn & Birrell would have been deprived of the right to discover and produce evidence refuting these elements.  "[A]ny question concerning prescriptive rights 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial [so that] the opposing party should not be required to defend against it on appeal.' [Citation]."  (*Dolske v. Gormley* (1962) 58 Cal.2d 513, 518-519.)

In addition, Southfork lacks standing to assert prescriptive water rights on Parcel C's behalf.  As the trial court observed, Southfork cannot claim a prescriptive right as to its own water tank or pipes.  (§ 805.)  Moreover, appellants cite no authority suggesting that a prescriptive right may be implicated where, as here, the parties' relationship is governed by CC&R's.  The case

21

Southfork cites, *Faus v. Los Angeles* (1967) 67 Cal.2d 350, is inapposite.

Southfork maintains that section 4.3.4.1 of the CC&R's grants Parcel C voting rights in the event of a dispute over the approval of "an expenditure for maintenance work in excess of" $4,000. To the contrary, section 4.3 and its subsections confirm that Parcel C "shall not be entitled to object to proposed expenditures until such time as it has connected into the Water Facilities." There is no indication of any intent to give Parcel C pre-connection voting rights.

8. *Southfork's Other Objections to the Trial Court's Declarations*

Southfork contests the trial court's allocation of maintenance costs and directives regarding billing and record-keeping practices. Declarations 5 through 8 require Southfork to follow the CC&R's. For example, section 4.5.2 directs Southfork to bill monthly and "include evidence of payment of the costs," which Southfork objects to doing. Notwithstanding its objections, Southfork must obey the CC&R's. It cannot unilaterally decide to forego some of its responsibilities under that document.

Southfork objects to Declaration 24, which requires appellants to use existing electrical power to make their new water well operational rather than obtaining additional power. Appellants chose to build the new well without involving Bunn & Birrell, even though the CC&R's require their approval of any extraordinary expenses. As explained above, Parcel C has no water or voting rights, and the CC&R's do not contemplate that appellants would go forward with the well without the requisite approvals. Because the electrical power issue should have been addressed before construction began, the trial court reasonably

decided it would be inappropriate to impose additional electrical power expenses on Bunn & Birrell when only Southfork approved the project.

Southfork challenges Declarations 2 and 15, which prohibit Parcel B from imposing water schedules, allocating water among the parcels or installing a meter to measure Parcel A's water flow. Contrary to Southfork's assertions, the trial court did not suggest that Southfork is barred from temporarily halting water flow while performing routine maintenance. The court's objective was to prevent an interpretation of the CC&R's that would "empower Parcel B to be an administrator, manager, director or in any other elevated position of authority[,] making Parcel B superior to any other Parcel." The court explained that the CC&R's limit Parcel B's duties to "ordinary maintenance and repair" and that section 4.6 does not allow Parcel B to install a water meter for Parcel A alone, leaving the other parcels unmetered.

Southfork claims it should be allowed to remove or destroy at will all property in Parcel A's easement areas. Declarations 21 and 22 state that appellants cannot damage or remove Parcel A's water or utility lines, fences, trees and such "absent a showing that those items unreasonably interfere with . . . use of the easement." As previously discussed, appellants failed to introduce credible evidence of any unreasonable interference within the easements. (See, e.g., *Inzana v. Turlock Irrigation Dist. Bd. of Directors* (2019) 35 Cal.App.5th 429, 443-444.) Going forward, appellants must secure approval from the trial court or receiver before removing or destroying Bunn & Birrell's personal or real property.

Southfork argues that Declarations 23 and 27 improperly require appellants to prove they have permits from "all public agencies having jurisdiction over the new upstream well site in the Santa Clara River" and must remove the new facilities if they cannot be lawfully completed. The trial court found appellants did not accurately inform the agencies that regulate the river bottom about the nature and purpose of their construction or prove that the agencies authorized the new well. It concluded appellants "have not met their burden of proof with respect to establishing that they have the right to take the water . . . with whatever structure [they] put out in the river bottom subsurface, . . . that's in compliance with the regulations of . . . whatever agency controls it." The court emphasized that no one contests the parties' right to take water from the old well, even if it is not producing robustly.

Appellants had the burden of proving the legality of the new well they rushed to construct. The trial court reasonably found appellants are responsible for removing the new well if governing agencies deny permits for it. Indeed, by claiming the court failed to identify which agencies must give approval, Southfork implicitly concedes its failure to obtain the necessary permits and approvals.

Declaration 28 requires appellants to obtain Bunn & Birrell's permission to use their private roadways outside the easement area to access the water facilities. Substantial evidence supports the trial court's finding that Southfork did not develop a prescriptive right to those roads based on prior use. The court noted that neither Bunn & Birrell nor their predecessors interfered with that use because an operational well is necessary to irrigate their crops. The court observed that Bunn

24

& Birrell will continue to benefit from Southfork's use of their roads to service the well, but found the prior "neighborly accommodation" did not ripen into a prescriptive easement based on hostile or adverse use.

Finally, many of the challenges to the Declarations are based on concerns of what could happen if they are not reversed. Appellants claim the Declarations are unduly burdensome and *could* result in several inequities. For example, appellants express concern about Parcel A's potential monopolization of the water supply and the possible decrease in their property values if this and other events come to pass.

We do not reverse rulings based upon speculation about what may or may not occur in the future. (See *People v. Gray* (2005) 37 Cal.4th 168, 230 [speculation cannot support reversal of a judgment]; *In re Esmeralda S.* (2008) 165 Cal.App.4th 84, 96 [same].) If, as appellants claim, a portion of the judgment proves unduly burdensome or inequitable as time goes on, proof to that effect can be presented to the trial court. (See *Scruby, supra*, 37 Cal.App.4th at p. 708.) "'We must assume reasonable action of the trial court in the future in determining whether its decree has in fact been violated'" or has become otherwise impracticable. (*Ibid.*, citation omitted.)

### B. *Challenges to Attorney Fees and Costs in Southfork II and III*

The CC&R's state that "[i]n the event of a suit, at law or equity, or other action or proceeding, by one or more parcel owners against other parcel owners, to enforce the terms of these CC&Rs, the prevailing party shall be entitled to recover all litigation costs and expenses, including without limitation

25

reasonable attorney fees and expert witness fees from those owners who do not prevail."

TNC sought $926,708.30 in attorney fees and costs. After reducing its law firm's requested hourly rate, the trial court awarded $585,865.83. Bunn & Birrell were collectively awarded $391,418.55 in attorney and expert fees for *Southfork II*. They also were awarded $504,206 in the current case (*Southfork III*.) Appellants contest both the legality and reasonableness of the awards.

### 1. Standard of Review

"""On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law.'" [Citations.] In other words, 'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo.' [Citations.] . . . [W]here the material facts are largely not in dispute, our review is de novo." (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 751.)

### 2. Appellants' Causes of Action are Based on a Contract

Appellants argue the trial court improperly awarded attorney's fees because this matter is not an "action on a contract" within the meaning of section 1717. But the term "on a contract" does not mean only traditional breach of contract causes of action. Rather, """California courts 'liberally construe "on a contract" to extend to any action "[a]s long as an action 'involves'

26

a contract and one of the parties would be entitled to recover attorney fees under the contract if that party prevails in its lawsuit.""""" (*In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1601; see *Mitchell Land & Improvement Co. v. Ristorante Ferrantelli, Inc.* (2007) 158 Cal.App.4th 479, 489.) Specifically, "[a]n action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement, and (2) the agreement contains an attorney fees clause." (*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.* (2012) 211 Cal.App.4th 230, 241-242 (*Douglas E. Barnhart*).)

Appellants correctly assert "section 1717 does not apply to tort claims; it determines which party, if any, is entitled to attorneys' fees on a contract claim only." (*Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 708, italics omitted; *Xuereb v. Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1342.) "'Whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. If based on breach of promise it is contractual; if based on breach of a noncontractual duty it is tortious. [Citation.] If unclear the action will be considered based on contract rather than tort. [Citation.] [¶] In the final analysis we look to the pleading to determine the nature of plaintiff's claim.'" (*Kangarlou v. Progressive Title Co., Inc.* (2005) 128 Cal.App.4th 1174, 1178-1179.)

The label a party places on a cause of action is not dispositive. Instead, courts look to the gravamen of the overall

27

action.  (See *Hyduke's Valley Motors v. Lobel Financial Corp.* (2010) 189 Cal.App.4th 430, 436.)  "An action is more likely to be found 'on a contract' for purposes of [section] 1717 if the agreement is broad in scope or if the main thrust of the litigation is based on the contract."  (Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 3d ed. 2020) § 4.50.)

CC&R's are considered a contract.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 240, 246.)  Respondents contend appellants' causes of action in *Southfork I* and *II* were themselves fundamentally grounded in the rights and obligations arising out of the CC&Rs and that their defensive responses flowed from those claims.  We agree.

Assessing the gravamen of the case, we conclude — as did the trial court — that the actions were on a contract.  Although the causes of action for interference with easement and trespass typically sound in tort, analyzing those claims requires an interpretation of the CC&R's.  In other words, respondents' acts were fundamentally related to and performed under the auspices of the rights and obligations delineated by the CC&Rs.  (See, e.g., *Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1608 [holding that a wrongful eviction action under a housing ordinance was "on a contract" because it was "fundamentally . . . based upon the lease, in that respondent sought compensation for appellant's wrongful interference with respondent's occupation and enjoyment of the leased premises"]; *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 347-348 [equitable action seeking declaratory and injunctive relief and to quiet title based on violations of the terms of a promissory note and deed of trust are actions on a contract]; *Texas Commerce Bank v. Garamendi*

28

(1994) 28 Cal.App.4th 1234, 1246-1247 ["Actions for a declaration of rights based upon an agreement are 'on the contract' within the meaning of Civil Code section 1717" where "the issues in the case had . . . everything to do with the interpretation of the [relevant contracts]"].)

     *3. Reasonableness of Attorney Fees and Costs*

     Appellants raise several claims regarding the reasonableness of the fees and costs. First, King contends Bunn & Birrell's recovery of fees as intervenors in *Southfork II* should be reversed because they over-litigated the matter. He asserts a demurrer or motion for judgment should have been brought earlier in the case, which would have obviated the need for further litigation and fees.

     Not only did King fail to raise this issue in the trial court, but he also did not oppose Bunn & Birrell's motion for fees at all. Likewise, Southfork did not contest the reasonableness of the fees. In *City of Santa Paula v. Narula* (2003) 114 Cal.App.4th 485, we declined to consider whether attorney fees were unnecessary or excessive because the point was not raised in the trial court. (*Id.* at p. 494; accord *Planned Protective Services, Inc. v. Gorton* (1988) 200 Cal.App.3d 1, 13, overruled on another ground by *Martin v. Szeto* (2004) 32 Cal.4th 445, 451.) We reach the same conclusion here.

     We also are not persuaded by King's suggestion that taking earlier action in *Southfork II* would have resulted in less fees and costs. As recognized in *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, "[i]n challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient

argument and citations to the evidence.  General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice.  Failure to raise specific challenges in the trial court forfeits the claim on appeal." (*Id.* at p. 564; *Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 488.)  Not only has King failed to meet this burden, but he also has not adequately demonstrated that Bunn & Birrell's attorneys performed unnecessary work in *Southfork II* and *III*.

Third, appellants argue the fees and costs should have been apportioned in *Southfork III* because some of the claims were not based "on a contract." (§ 1717.)  We already have rejected this argument.  Moreover, apportionment between covered and uncovered claims is within the trial court's discretion.  (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.)  Appellants have not demonstrated an abuse of that discretion given the significant overlap between the issues raised in the complaint and cross-complaint.  (See *Douglas E. Barnhart*, *supra*, 211 Cal.App.4th at p. 250.)

Lastly, appellants contend the attorney fees recovered by Bunn & Birrell as intervenors in *Southfork II* and as defendants and cross-complainants in *Southfork III* should have been separately allocated so that none of the fees awarded for *Southfork II* would be included in the *Southfork III* order.  The trial court found Bunn & Birrell had properly identified and allocated the fees incurred solely in *Southfork II* and *Southfork III,* as well as the fees incurred on issues, facts and law common to both.

Generally, "'[a]pportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorneys time into compensable

30

and non-compensable units.'" (*Douglas E. Barnhart, supra*, 211 Cal.App.4th at p. 250.) In any event, the trial court addressed appellants' concerns regarding a possible double recovery. While it is true that both *Southfork II* and *Southfork III* include duplicative awards of $376,638.10 in attorney fees and $14,780.45 in expert fees, the court stated it would not allow double payments. Once an obligation is paid in one case, respondents do not "get to recover in the second case." In that event, appellants would be entitled to a credit or offset under the satisfaction of judgment rules. (See Code of Civ. Proc., § 724.010.)

In its reply brief, Southfork concedes it is not concerned about a double recovery of the $376,638.10 in attorney fees because that amount has been credited toward the *Southfork II* and *III* awards. Its concern involves the $14,780.45 duplicative award of expert fees in the two cases. Although the trial court made clear it would not allow a double recovery, we shall modify the fee orders to confirm that payment of the expert fees will be credited against the amount due in both orders.[7]

### 4. *Judicial Estoppel*

"'Judicial estoppel [is a discretionary, equitable doctrine that] enables a court to protect itself from manipulation. The interested party is thus the court in which a litigant takes a position incompatible with one the litigant has previously taken . . . .' [Citation.]" (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 184.) The decision whether to apply the

---

[7] In light of this decision, we need not consider appellants' alternative argument that the duplicative fee awards violate the one judgment rule.

doctrine is reviewed for abuse of discretion. (*Kerley v. Weber* (2018) 27 Cal.App.5th 1187, 1195.)

Southfork raised this argument in opposition to Bunn & Birrell's motion for attorney fees in *Southfork II*. It claimed Bunn & Birrell took opposing positions in two separate proceedings and should be penalized as a result. But Southfork did not raise the issue at the hearing on the motion and the trial court never expressly ruled on it. The court granted all the fees they sought, implicitly rejecting the judicial estoppel claim.

We are not inclined to second-guess the trial court on whether it should have applied a discretionary, equitable doctrine under the facts of this case. The abuse of discretion standard requires a showing that the court "'exceed[ed] the bounds of reason, all of the circumstances before it being considered.'" (*Denham, supra,* 2 Cal.3d at p. 566.) Southfork has not met that burden. It had an opportunity to secure a ruling on its judicial estoppel argument but failed to do so. On this record, it is impossible to assess whether an abuse of discretion occurred. The court may have had a good reason for rejecting the doctrine.

As previously discussed, the trial court recognized the two judgments include some duplicative fees and costs and imposed safeguards to prevent a double recovery. It may have been preferable to clarify the judgments, but appellants have not demonstrated that these safeguards and the satisfaction of judgment procedures will not protect them. (See Code of Civ. Proc., § 724.010.)

### 5. *Award of Expert Fees*

The trial court awarded Bunn and Birrell a total of $14,780.45 in expert fees. Those fees were included in both *Southfork II* and *III* fee orders. As with the attorney fees, the

court included safeguards against a double recovery so that the same amount will not be paid twice.

Appellants argue Bunn & Birrell failed to plead and prove the expert fees at trial, but such proof is not necessary where, as here, the agreement specifically entitles the prevailing party to expert fees.  (See *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC,* (2010) 185 Cal.App.4th 1050, 1067 [It is "unnecessary to specially plead and prove expert witness fees, at least in a case where expert fees are explicitly included in the contract as recoverable costs"].)  We are not persuaded that our decision in *Jones v. Union Bank of California* (2005) 127 Cal.App.4th 542 compels a different result.

## III.  DISPOSITION

The post-trial judgment in favor of Bunn & Birrell in *Southfork III* (No. B279391) is affirmed.  The orders awarding attorney fees and costs to respondents in *Southfork II and III* (No. B280994) are modified to clarify that the $14,780.45 award of expert fees may only be collected once.  In all other respects, they are affirmed.  Respondents shall recover their costs on appeal.

NOT TO BE PUBLISHED.


PERREN, J.

We concur:



GILBERT, P. J.            YEGAN, J.


33

Kent M. Kellegrew, Judge
Superior Court County of Ventura
_____


Law Offices of Gary Byron Roach, Gary Byron Roach, for Plaintiff, Appellant and Cross-Appellant Southfork Ranch, LLC.

Miller Starr Regalia, Amy Matthews and Matthew C. Henderson, for Plaintiff, Appellant and Cross-Appellant R. Eric King.

Arnold LaRochelle Mathews Vanconas & Zirbel, Dennis LaRochelle and Susan McCarthy; Karcher Harmes, Kathryn E. Karcher, for Defendants, Respondents and Cross-Respondents David Bunn and Ellen Birrell.

Covington & Burling LLP, David B. Goodwin, Martin H. Myers, Alexa R. Hansen and Benjamin Cain, for Respondent The Nature Conservancy.