Filed 8/28/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| DAVID THACKER,<br>        Plaintiff and Appellant,<br>v.<br>CITY OF FAIRFIELD et al.,<br>        Defendants and Respondents. | A171354<br><br>(Solano County<br>Super. Ct. No. CU23-03108) |

David Thacker (Plaintiff) challenges an assessment levied by the City of Fairfield (City) as being in violation of Proposition 218. The trial court rejected the challenge, finding the assessment is exempt from Proposition 218 and has not been increased for purposes of Proposition 218. We conclude the assessment has been increased, and reverse and remand.

LEGAL BACKGROUND

"Proposition 218, approved by voters in 1996, is one of a series of voter initiatives restricting the ability of state and local governments to impose taxes and fees. [Citation.] The first of these measures was Proposition 13, adopted in 1978, which limited ad valorem property taxes to 1 percent of a property's assessed valuation and limited annual increases in valuation to 2 percent without a change in ownership. [Citations.] To prevent local governments from increasing special taxes to offset restrictions on ad valorem

1

property taxes, Proposition 13 prohibited counties, cities, and special districts from imposing special taxes without a two-thirds vote of the electorate. [Citations.] But local governments were able to circumvent Proposition 13's limitations by relying on *Knox v. City of Orland* (1992) 4 Cal.4th 132 [141, 14 Cal.Rptr.2d 159, 841 P.2d 144], which held a 'special assessment' was not a 'special tax' within the meaning of Proposition 13. [Citation.] Consequently, without voter approval, local governments were able to increase rates for services by labeling them fees, charges, or assessments rather than taxes." (*Plantier v. Ramona Municipal Water Dist.* (2019) 7 Cal.5th 372, 380–381, fn. omitted.)

"In November 1996, in part to change this rule, the electorate adopted Proposition 218, which added articles XIII C and XIII D to the California Constitution. Proposition 218 allows only four types of local property taxes: (1) an ad valorem property tax; (2) a special tax; (3) an assessment; and (4) a fee or charge. (Cal. Const., art. XIII D, § 3, subd. (a)(1)–(4); see also Cal. Const., art. XIII D, § 2, subd. (a).) It buttresses Proposition 13's limitations on ad valorem property taxes and special taxes by placing analogous restrictions on assessments, fees, and charges." (*Howard Jarvis Taxpayers Assn. v. City of Riverside* (1999) 73 Cal.App.4th 679, 682 (*Riverside*).) With respect to assessments, Proposition 218 provides that one may be imposed only if "it is supported by an engineer's report," "it does not exceed the reasonable cost of the proportionate special benefit conferred on each affected parcel," and "it receives, by mailed ballot, a vote of at least half of the owners of affected parcels, weighted 'according to the proportional financial obligation of the affected property.' " (*Riverside*, at p. 682, citing Cal. Const., art. XIII D, § 4.)

"In general, an assessment already in existence on the effective date of Proposition 218 (preexisting assessment) must comply with Proposition 218 by July 1, 1997.  Four specified classes of preexisting assessments, however, are 'exempt from the procedures and approval process set forth in Section 4.' (Cal. Const., art. XIII D, § 5.)"  (*Riverside*, *supra*, 73 Cal.App.4th at p. 682.) As relevant here, a preexisting assessment is exempt if "imposed exclusively to finance the capital costs or maintenance and operation expenses for sidewalks, streets, sewers, water, flood control, drainage systems or vector control."  (Cal. Const., art. XIII D, § 5, subd. (a).)  Proposition 218 also provides that "[s]ubsequent increases in such assessments shall be subject to the procedures and approval process set forth in Section 4."  (*Ibid.*)

FACTUAL AND PROCEDURAL BACKGROUND[1]

In 1988, the City formed the Rolling Hills Maintenance District (District) pursuant to the Landscape and Lighting Act of 1972 (Sts. & Hy. Code, § 22500 et seq.).  The District was formed to enable the City to levy an assessment (Assessment) for "[t]he maintenance of landscaping and lighting improvements" in the District, including landscaping on median strips and between the curb and sidewalk.

The City has levied an Assessment every year since the District's formation.  It is undisputed that, following the passage of Proposition 218, the City did not submit the Assessment to voters pursuant to the procedures set forth in Proposition 218.  On Proposition 218's effective date, the

---

[1] We grant Plaintiff's unopposed December 13, 2024 request for judicial notice of various City resolutions and a Legislative Analyst's Office publication.  (Evid. Code, § 452, subds. (b) & (c).)

Assessment was $196.23 per residential lot.[2]  For the property tax year 2022–2023, the Assessment was $300 per residential lot.

Plaintiff owns a residential lot in the District.  In 2023, Plaintiff filed the underlying petition seeking a declaratory judgment that the Assessment is subject to Proposition 218 and seeking a refund of the Assessment for the four previous tax years.[3]  After the parties submitted documentary evidence, briefing, and argument, the trial court found the Assessment exempt from Proposition 218's requirements, and further found the amount of $300 does not constitute an increase because it does not exceed a range established prior to Proposition 218.  Judgment issued for the City.

## DISCUSSION

The parties dispute whether the Assessment is exempt under Proposition 218 (Cal. Const., art. XIII D, § 5, subd. (a)) and, because "[s]ubsequent increases in such assessments shall be subject to the procedures and approval process set forth in Section 4" (*ibid.*), the parties also dispute whether the Assessment has been increased.  The parties agree that reversal is required if we determine either that the Assessment is not exempt or that it has been increased.  As explained below, we conclude the Assessment has been increased, and we therefore need not and do not decide whether it was exempt prior to the increase.

Proposition 218 does not define "increase."  (See Cal. Const., art. XIII D, § 2.)  To construe the word, both parties rely on provisions of the

---

[2] A different amount applied to a subdivision of the District.  We focus on the Assessment applicable to Plaintiff's lot.

[3] Plaintiff also sued Solano County, which collects the Assessment and transmits the proceeds to the City.  Solano County did not file a response brief on appeal.

Proposition 218 Omnibus Implementation Act (Gov. Code, § 53750 et seq.;[4] hereafter the Act), passed in 1997 and "designed to clarify the implementation of Proposition 218." (*Greene v. Marin County Flood Control & Water Conservation Dist.* (2010) 49 Cal.4th 277, 286; see also *id.* at p. 290 [" '[i]n cases of ambiguity we . . . may consult any contemporaneous constructions of the constitutional provision made by the Legislature' "].)

The Act includes a detailed definition of the term "increase." (§ 53750, subd. (h).) This definition includes the following: " 'Increased,' when applied to a tax, assessment, or property-related fee or charge, means a decision by an agency that" "[i]ncreases any applicable rate used to calculate the tax, assessment, fee, or charge." (*Id.*, subd. (h)(1)(A).) At oral argument, the City argued for the first time on appeal that the Assessment did not increase under this definition because there is no applicable "rate"; instead, the Assessment is calculated by spreading the cost of the services equally among the residential lots (after a certain allocation to commercial lots). We requested and received supplemental briefing on this issue, and we reject the City's construction of the statute.[5]

The City argues that section 53750 uses "rate" and "amount" differently, indicating the two terms are not synonymous. We agree that the terms are used distinctly. For example, the statute provides an assessment is increased when the relevant agency either "[i]ncreases any applicable *rate* used to calculate the . . . assessment" or "[r]evises the methodology by which the . . . assessment . . . is calculated, if that revision results in an increased *amount* being levied on any person or parcel." (§ 53750, subd. (h)(1), italics

---

[4] All undesignated statutory references are to the Government Code.

[5] We grant Plaintiff's July 9, 2025 request for judicial notice of the Proposition 218 ballot pamphlet, submitted with his supplemental brief.

added.)  Similarly, another part of the statutory definition provides that an assessment is not increased if "the *actual payments* from a person or property are higher than would have resulted when the agency approved the . . . assessment . . . , if those higher payments are attributable to events other than an increased *rate* or revised methodology . . . ."  (§ 53750, subd. (h)(3), italics added.)  The plain language of the statute is clear that the term "rate" is not equivalent to the "amount being levied" or the "actual payments" made.

The City goes too far, however, in arguing that a rate can *never* be the same as the amount levied or actual payment.  The City contends this construction is consistent with the intent of Proposition 218 voters, who sought to ensure that the total amount assessed was no greater than the cost of the service provided.  Finding the Assessment does not have a rate within the meaning of section 53750, subdivision (h)(1)(A), the City argues, would allow public agencies to increase such assessments as the costs of providing an ongoing service rise over time, without having to submit each increase to the voters.  Thus, the City urges us to construe rate to mean only a per-variable-unit rate—for example, a rate per gallon of water—such that the amount assessed is the per-unit rate multiplied by the number of units used by that parcel.

The City provides no reasoned explanation why, even if the term "rate" is limited to a per-unit rate, the unit at issue cannot be a parcel or lot.  (See *Silicon Valley Taxpayers' Assn., Inc. v. Santa Clara County Open Space Authority* (2008) 44 Cal.4th 431, 441 [referring to assessment levied uniformly on each single-family home as a "$20 flat-rate levy"].)  Indeed, the definition of "increase" in section 53750, subdivision (h)(1)(A) also applies to taxes, and a special tax on property may be levied at a per-parcel rate.  (See *Neilson v. City of California City* (2005) 133 Cal.App.4th 1296, 1301 [holding

6

"a flat-rate parcel tax" was "a valid special tax" when approved by a two-thirds vote of the electorate].) It would be incongruous to find that raising such a tax would not constitute an increase simply because it was imposed as a flat rate per parcel. Accordingly, we conclude that "rate" encompasses a per-parcel rate for purposes of section 53750, subdivision (h)(1)(A).

In addition, the City's interpretation of "rate" is undermined by provisions of the Act which carefully circumscribe the authority of public agencies to increase assessments as the cost of providing an ongoing service rises over time. A public agency can avoid submitting to Proposition 218's procedures for each such increase by presenting to the voters a schedule or formula for future inflationary adjustments. (§ 53739, subd. (b)(1) ["an ordinance or resolution presented for voter approval pursuant to Article XIII C or XIII D of the California Constitution may provide that the tax, assessment, or property-related fee or charge rates or amounts stated in that ordinance or resolution may be adjusted for inflation pursuant to a clearly identified formula stated in that ordinance or resolution"]; § 53753.5, subd. (a) [Proposition 218's procedural requirements "shall not apply" unless "the amount of that assessment is proposed to exceed an assessment formula or range of assessments adopted" pursuant to Proposition 218 procedures].) These provisions and others specifying circumstances in which inflationary adjustments can be made strongly indicate the Legislature did not contemplate such adjustments be made without compliance with Proposition 218 procedures in other circumstances. (See also § 53756, subd. (a) ["agency providing water, wastewater, sewer, or refuse collection service may adopt a schedule of fees or charges authorizing automatic adjustments that pass through increases in wholesale charges for [these services] or adjustments for

7

inflation" "for a period not to exceed five years" after submitting it to property owners and allowing written protests].)

Moreover, it is consistent with the purposes underlying Proposition 218 that those few preexisting assessments exempted from the new requirements should not increase indefinitely without coming into compliance with Proposition 218. Indeed, the Act authorizes pre-Proposition 218 taxes, fees, and charges to be adjusted pursuant to "a clearly defined formula for inflation adjustment that was adopted by the agency prior to November 6, 1996," but assessments are omitted from this provision. (§ 53750, subd. (h)(2)(A) [providing that "[a] tax, fee, or charge" so adjusted "is not deemed to be 'increased' "].) This omission strongly suggests that, while certain preexisting assessments are exempt from the requirements of Proposition 218, the exemption was not intended to extend to inflationary adjustments when the variable cost of providing ongoing services increased.

Accordingly, we conclude that because the current Assessment's rate ($300 per residential lot) is greater than the rate on Proposition 218's effective date ($196.23 per residential lot), the rate per residential lot increased after the adoption of Proposition 218 under section 53750, subdivision (h)(1)(A).[6]

Alternatively, the City argues there has been no increase because the Assessment has not exceeded a range of $200–$300 set by the City prior to Proposition 218.[7] The City relies on section 53753.5, subdivision (a), which

---

[6] Because of this conclusion, we need not decide whether, as the parties dispute, the Assessment also increased under section 53750, subdivision (h)(1)(B).

[7] Plaintiff also argues the trial court's finding that the City set such a range is not supported by substantial evidence. We need not and do not decide this issue.

provides: "If an agency has complied with the notice, protest, and hearing requirements of Section 53753 [codifying Proposition 218's requirements for assessments], *or if an agency is not required to comply with those requirements because the assessment is exempt from the procedures and approval process set forth in Section 4 of Article XIII D of the California Constitution*, then those requirements shall not apply in subsequent fiscal years unless the assessment methodology is changed to increase the assessment, *or the amount of that assessment is proposed to exceed an assessment formula or range of assessments adopted by an agency in accordance with Article XIII D of the California Constitution or Section 53753*." (Italics added.)

The City concedes that its pre-Proposition 218 range was not adopted pursuant to the procedures set forth in Proposition 218 or section 53753. Instead, the City argues the statute encompasses such preexisting ranges: "The Legislature undoubtedly intended the reference to Article XIII D [in the last phrase] to include exempted assessments, otherwise the separate reference to Section 53753, which codifies Section 4's procedural requirements, would be superfluous." We disagree. The statute refers to a range "adopted . . . in accordance with" Proposition 218. We fail to see how this language could mean a range adopted *before* Proposition 218. Instead, it clearly means a range that has satisfied the requirements set forth in Proposition 218. We also disagree that such a construction renders the reference to section 53753 superfluous. Section 53753 codifies and clarifies the requirements of Proposition 218 with respect to assessments. (*Golden Hill Neighborhood Assn, Inc. v. City of San Diego* (2011) 199 Cal.App.4th 416, 432 ["Government Code section 53753 . . . was 'designed to clarify the implementation of Proposition 218' "].) The provision therefore applies where

9

a range has been adopted pursuant to the procedures in Proposition 218, or pursuant to the clarified version of these procedures in section 53753.

The legislative history supports this construction. A committee report described the bill as providing "that a local agency, after complying with the bill's notice, protest, hearing, and assessment ballot requirements, need not go through these procedures again in subsequent years unless it changes the assessment methodology to increase the assessment or exceed a formula or range *adopted in accordance with Proposition 218 as codified in this bill*." (Assem. Com. on Elections, Reapportionment and Const. Amends., Rep. on Sen. Bill No. 919 (1997–1998 Reg. Sess.) as amended May 23, 1997, p. 2, italics added.) In contrast, the discussions of exempt assessments in the legislative reports do not refer to preexisting ranges. (E.g., Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 919 (1997–1998 Reg. Sess.) as amended June 30, 1997, pp. 1–2 [bill "[c]larifies that certain assessments (for sidewalks, streets, sewers, water, flood control, drainage, and vector control) that are exempt from the provisions of Proposition 218 until the assessments are 'increased' would remain exempt even though the assessments are 'renewed' annually. Essentially this declares that 'renewed' shall not be considered to be a form of 'increased' for these exempt assessments"].)

In sum, even if the Assessment fell within the exemption set forth in article XIII D, section 5, subdivision (a) of the California Constitution, it was increased for purposes of Proposition 218 when it exceeded the rate of $196.23 per residential lot—the rate at the time Proposition 218 took effect.[8]

---

[8] Plaintiff argues the trial court abused its discretion in overruling certain evidentiary objections. Because we have not relied on any of the challenged evidence, we need not and do not consider this argument.

## DISPOSITION

The judgment is reversed and remanded for further proceedings not inconsistent with this opinion.  Plaintiff shall recover his costs on appeal.


SIMONS, J.


We concur.


JACKSON, P. J.
BURNS, J.


(A171354)

**Thacker v. City of Fairfield et al. (A171354)**

11

Trial Court:      Superior Court of California, County of Solano

Trial Judge:     Hon. Tim P. Kam

Counsel:         Benink & Slavens, Eric J. Benink and Vincent D. Slavens for Plaintiff and Appellant.

                 Richards, Watson & Gershon, Steven A. Nguy and Henry M. York for Defendant and Respondent City of Fairfield.